PLAINTIFF'S EXHIBIT 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | CIVIL NO. 98-1664 and 98-2344 (CCC) |
| ) | |
| vs. ) | |
| ) | |
| 33.92536 ACRES OF LAND, MORE ) | |
| OR LESS, SITUATED IN VEGA BAJA, ) | |
| COMMONWEALTH OF PUERTO RICO, ) | |
| AND JUAN PIZA BLONDET, AND ) | |
| UNKNOWN OWNERS ) | |
| ) | |
| Defendants. ) | |

## DECLARATION OF GONZALO FERRER

I, Gonzalo Ferrer, declare as follows:

1.  I am a licensed real estate appraiser and engineer with more than thirty years of experience in the real estate appraisal profession. At the October 26, 1999 hearing in this case, the parties stipulated to my qualifications as an expert in real estate and appraisal matters.

2.  In 1999, I was retained by the Department of Justice and the Federal Aviation Administration in this condemnation proceeding to appraise the market value of the 34-acre condemned parcel as of the date of taking, December 2, 1998. In September 1999, I completed a self-contained appraisal report of the condemned parcel.

3   On October 26, 1999, I testified as an expert witness in this case at a hearing held before the Hon. Gilberto Gierbolini. At the hearing, I testified that I was aware that Mr. Piza-Blondet had obtained development approvals and permits for residential housing, a restaurant, and a gas station to be built on the western portion of his property near State Road 687. I further testified that I was not aware of any permits or approvals that might have been granted for development on the eastern portion of Mr. Piza-Blondet's 400-acre tract that is zoned B-2 and is adjacent to the site of the 34-acre condemned parcel.

4.  At the October 26, 1999 hearing, I testified that the "larger parcel" for the "before and after" appraisal method was the portion of the 400-acre tract that lies to the east of the area that already had been approved for development. I testified that the highest and best use for the larger parcel and the 34-acre condemned parcel was passive recreation. In other words, the western portion of the 400-acre parcel, which is zoned C-R, A-D, and R-0, is outside the larger parcel. I did not testify that the western portion of the 400-acre

tract, which had already been approved for development on the date of taking, shares the same highest and best use of passive recreation with the eastern portion.

5. In February of 2005, counsel for the Department of Justice sent me copies of Defendant's Exhibits 1-16. After reviewing these documents, I have determined that they mostly concern development projects and approvals on the western portion of the 400-acre tract of which I had been aware when I testified at the October 26, 1999 hearing.

6. Defendant's Exhibits 1, 2, 3, and 4 are identified as "Permit for (27) 900 Meter Lots Zoned R-1," "Permit for (44) 900 Meter Lots Zoned R-1," "Permit for (27) 900 Meter Lots Zoned R-1," and "Permit for (49) 300 Meter Lots Zoned R-3," respectively. These documents appear to be permits issued by the Administracion de Reglamentos y Permisos ("ARPE") for construction of residential housing lots in the Haciendas de Tortuguero subdivision. As I testified at the October 26, 1999 hearing, I was aware at that time that Mr. Piza-Blondet had obtained approval for the Haciendas de Tortuguero development, which is located on the western portion of the 400-acre tract.

7. Defendant's Exhibits 5 and 6 are identified as "Approval for Construction of Gas Station" and "Approval by ARPE for Construction of Restaurant," respectively. It is unclear from the face of these documents whether they constitute final approvals for development of a gas station or restaurant. As I testified at the October 26, 1999 hearing, I was aware at that time that Mr. Piza-Blondet had obtained approval for development of a gas station and restaurant on the western portion of the 400-acre tract near State Road 687.

8. Defendant's Exhibit 7 is identified as "Survey Map Approved by ARPE for Sale of (9) 900 Meter Lots Zoned R-1." This document bears a stamp dated December 28, 2000. The nine lots depicted in this document are located on Calle Felipe Garcia, which is in the central portion of the 400-acre tract. Despite the Defendant's characterization of the zoning as "R-1," there is nothing in this document to confirm that R-1 is the correct zoning designation. The Zoning Map attached as Exhibit A to this Declaration seems to indicate that the zoning for this area is B-2. However, due to the fact that the zoning boundaries on that map are approximate, it is difficult to determine the actual zoning designation for this area. It is my recollection from personally inspecting the property in 1999 that residential housing has existed along Calle Felipe Garcia for some time. This suggests to me that the underlying zoning might be "A-D," which is the zoning designation for areas that already have been developed.

9. Defendant's Exhibit 8 is identified as "Survey Map Approved by ARPE for Sale of 1 1200 Meter Lot Zoned R-1." This document bears a stamp dated October 1, 2002. The 1200 meter lot depicted in this document is located on Calle Felipe Garcia in the central portion of the 400-acre tract. Despite the Defendant's characterization of the zoning as "R-1," there is nothing in this document to confirm that R-1 is the correct zoning designation. The Zoning Map attached as Exhibit A to this Declaration seems to indicate

2

that the zoning for this area is B-2. However, due to the fact that the zoning boundaries on that map are approximate, it is difficult to determine the actual zoning designation for this area. It is my recollection from personally inspecting the property in 1999 that residential housing has existed along Calle Felipe Garcia for some time. This suggests to me that the underlying zoning might be "A-D," which is the zoning designation for areas that already have been developed.

10. Defendant's Exhibit 9 is identified as "Construction Permit for 1 1200 meter Lot Zoned R-1." This document bears a stamp dated August 6, 2004. It appears that the 1200 meter lot identified in this document is the same 1200 meter lot depicted in Exhibit 8. This document states that the zoning of this 1200 meter lot is A-D. This is further evidence that the actual zoning for the lots along Calle Felipe Garcia are located in an A-D zone.

11. Defendant's Exhibit 10 is identified as "Walk-Up Building Resolution Filed and Pending Before ARPE." This document does not bear an official stamp from ARPE, and there is no indication whether it is still pending approval. The document is dated July 10, 1997, which means that it supposedly has been pending approval for more than six years. The document appears to be an application for approval of a 74-unit apartment development called "Blondet Gardens" located on the eastern portion of the 400-acre tract in the B-2 zone. As I testified at the October 26, 1999 hearing, I was not aware of any permits or approvals that had been granted for development on any portion of Mr. Piza-Blondet's property zoned B-2.

12. Defendant's Exhibit 11 is identified as "Survey Map for 18 Lots Filed and Pending Before ARPE." This document does not bear an official stamp from ARPE, and there is no indication of whether it is still pending approval. The map is dated July 10, 1998, which means that it supposedly has been pending approval for more than six years. The document proposes subdividing the eastern portion of the 400-acre tract, and depicts the "Blondet Gardens" development adjacent to the 34-acre condemned parcel in the B-2 zone. As I testified at the hearing in 1999, I was not aware of any permits or approvals for development on this portion of the 400-acre tract zoned B-2.

13. Defendant's Exhibits 12-15 are not permits or approvals for development on Mr. Piza-Blondet's 400-acre tract. Defendant's Exhibits 12 and 13 appear to be photographs of construction in the Haciendas de Tortuguero subdivision. Defendant's Exhibit 14 appears to be documents relating to the sale of property in the Haciendas de Tortuguero subdivision. Defendant's Exhibit 15 is a map of the 400-acre tract in which Defendant has identified the projects in the western and central portion that have been approved, as well as the projects in the eastern portion that have not been approved, but that supposedly are pending approval

14. Defendant's Exhibit 16 is a zoning map for the Tortuguero Lagoon Hydrographic Basin that was proposed, but there is no indication that it was ever approved. This is not the zoning map that was in effect on the date of taking, December 2, 1998.

15. Attached as Exhibits A, B, and C to this Declaration are various maps that I relied on during my testimony at the October 26, 1999 hearing. Exhibit A, which was admitted as Government's Exhibit 4 at the hearing, is a map depicting the approximate boundaries of the zoning that was in effect on the 400-acre tract on the date of taking. Exhibit B, which was admitted as Government's Exhibit 3 at the hearing, is a map depicting the approximate boundaries of the Flood Zones in effect on the 400-acre tract on the date of taking. Exhibit C, which was admitted as Government's Exhibit 2 at the hearing, is a map depicting the approximate locations of wetlands and uplands on the 400-acre tract.

16. Attached as Exhibits D, E, and F to this Declaration are maps that depict the approximate locations of the projects referenced in Defendant's newly-produced documents. Exhibit D depicts the approximate locations of those projects in relation to the zoning boundaries that were in effect on the date of taking. Exhibit E depicts the approximate locations of those projects in relation to the wetlands on the 400-acre tract. Exhibit F depicts the approximate locations of those projects on an aerial photograph of the subject property taken in 2004.

17. In the six years that have passed since I was retained in 1999, I have retired from the practice of providing expert witness services as part of my appraisal practice. Therefore, I have informed counsel for the Department of Justice that I will no longer be available to testify at trial as an expert witness for the Government. I am still retained as a consulting expert for the Government in this proceeding.

18. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED ON April __7__, 2005

GONZALO FERRER



ZONING MAP
REF: CUENCA HIDROGRAFICA, LAGUNA TORTUGUERO
SCALE: 1:20,000
VEGA BAJA, PR
FIG. 3

DAMES & MOORE LEBRON, LLP

PLAINTIFF'S EXHIBIT A

FIG. 4 — FLOOD PRONE ZONE
REF. SHEET 7B, 1988
SCALE 1:20,000
VEGA BAJA, PR
DAMES & MOORE LEBRON, LLP

PLAINTIFF'S EXHIBIT B

D & M JOB NO: 13051-059  BY: MIELE  DATE: MAY 27, 1999  REVISIONS:
CHECKED BY: M. NAGY  BY:  DATE:

GRAPHIC SCALE
( IN FEET )
1 inch = 500 ft.
0  250  500  1000

**PROJECT:** LAND COVER MAP — U.S. v. JUAN PIZA
**LOCATION:** VEGA BAJA, PUERTO RICO

Acreage labels on map:
- 1.14 Ac.
- 11.58 Ac.
- 57.33 Ac.
- 3.25 Ac.
- 5.51 Ac.
- 0.31 Ac.
- 0.33 Ac.
- 39.95 Ac.
- 0.65 Ac.
- 0.25 Ac.
- 0.06 Ac.
- 15.40 Ac.
- 0.47 Ac.
- 13.97 Ac.
- 212.96 Ac.
- 3.66 Ac.
- 55.48 Ac.
- 2.82 Ac.

LEGEND
- UPLAND AREA
- WETLAND AREA
- ACQUISITION PARCEL
- ENTIRE PARCEL

Dames & Moore
A DAMES & MOORE GROUP COMPANY

FIGURE 8

PLAINTIFF'S EXHIBIT C

April 01, 2005
Drawing: Z:\DOJ\TORTUGUERO\DWG\ENV\2005-03-28, FIG. TORTUGUERO.DWG

JUAN PIZÁ PROPERTY

EXHIBITS 8-9
EXHIBITS 2-3
EXHIBITS 5-6
EXHIBITS 1-4-12-13-14
EXHIBIT 10-11
EXHIBITS 7-8-9

**URS**

ZONING MAP (BEFORE FEB. 25, 2003)
MR. JUAN PIZÁ PROPERTY
YEGUADA WARD
VEGA BAJA, PUERTO RICO

PLAINTIFF'S EXHIBIT D

**TOPOGRAPHIC MAP
MR. JUAN PIZÁ PROPERTY
YEGUADA WARD
VEGA BAJA, PUERTO RICO**

URS

PLAINTIFF'S EXHIBIT E

<-秒>


<-秒>

AERIAL PHOTO (2004)
MR. JUAN PIZÁ PROPERTY
YEGUADA WARD
VEGA BAJA, PUERTO RICO