UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>　　　　Plaintiff,　　　v.<br>33.92356 ACRES OF LAND MORE OR LESS, SITUATED IN VEGA BAJA, COMMONWEALTH OF PUERTO RICO, AND JUAN PIZA BLONDET, et al.<br>　　Defendants | CIVIL 98-1664CCC  CIVIL 98-2344CCC |

MEMORANDUM IN SUPPORT OF DEFENDANT'S RESPONSE TO DECLARATION OF MR. GONZALO FERRER AND TO PLAINTIFF'S RESPONSE TO DOCUMENTS PRODUCED BY DEFENDANT RELATING TO HIGHEST AND BEST USE AND PROPER APPRAISAL METHOD.

**MAY IT PLEASE THE COURT:**

The Defandant Pizá-Blondet, respectfully submits the following rebuttal to the Declaration and Argument filed the United States. The Defendant limits his discussion to issues raised in the April 7, 2005, Government's filing and, therefore, it is believed that the Government has no opposition to this fling.

The issue to be decided by this Honorable Court based upon the evidence presented is the amount of just compensation that is owed to the Defendant for the taking. See, United States v. Reynolds, 397 U.S. 14, 19-20 (1970). The question of whether a condemned parcel should be appraised independently or as a part of a larger parcel is a factual determination that should be decided by the Court. Reynolds, supra. This Court previously ruled in its November 22, 2004, Order (Docket No. 82), that three elements must be met in order for a condemned parcel to be considered part of a larger parcel: (1) unit of ownership; (2) physical unity; and (3) unity of use.

However, the concept "unity of use" must be viewed on the basis of two criteria.

> That the subject 33.92356 Acres should be treated as an independent parcel with legal character of its own because it may be segregated from the main tract and in fact these is a title search that shows it is an independent parcel (A new title search for the specific subject has been ordered by the Appraiser in order to verify this along with its effective date).
>
> Local Jurisprudence* recognizes that when appraising a large tract (an the court uses in excess of 150 cuerdas" as an example) which has easily identifiable sectors that may be dedicated to different highest and best uses, it is justified and convenient to appraise the property on the basis of sectors or portions. In this case "upland" and "wetland" are easily identifiable and distinct.

---

*Pueblo v. Sucesión Quiñones, 71 D.P.R. 261, ELA v. Soc. Civil Agrícola e Industrial, 104 D.P.R. 392, Nichols, on Eminent Domain, Vol 4, sec 12-314

This Court also previously ruled that the first two factors had been satisfied in this case. The sole remaining issue to be decided by this Court is, therefore, whether the Condemned Parcel and that various tracts of upland which the Defendant owns (and which surround the Condemned Parcel) share "unity of use". The Defendant contends that the evidence submitted to this Court clearly shows that the Condemned Parcel shares the required "unity of use" for residential and light commercial development. The evidence unequivocally shows that in fact the Defendant's upland has been and presently is being developed for residential and commercial use. It is respectfully submitted, that the highest and best use standard for valuing the property must be applied in this case considering the subject an independent parcel.

In support of this conclusion the Defendant has submitted to the Court the Declaration of Mr. Carlos E. Gaztambide. Mr. Gaztambide's *curriculum vitae* is

attached to the Declaration. The Government relies heavily upon the opinion of its appraiser Mr. Ferrer to conclude that the various land use regulations and restrictions operate to prevent the development of the Defendant's property for commercial or residential use. This opinion is directly contradicted by the Declaration of Mr. Gaztambide and the evidence before this Court.

Mr. Gaztambide's Declaration **quotes Gustavo Adolfo Rodríguez, Ecologist that** accurately describes the Pizá property:

"In addition, an evaluation of Sheet No. 7B of the "*Map of Zones Susceptible to Inundations (Mapa de Zonas Susceptibles a Inundaciones)*", published by the Puerto Rico Planning Board (PRPB), with an effective date of 5 January 2002 (Figure No. 3), shows that Mr. Piza's property is found within three distinct zones:

a. Zone 1 - located on the eastern portion of the property. This zone covers a small area of the entire property (approximately 10% to 15% percent). Puerto Rico's Department of Natural and Environmental Resources (DNER) does not condone development in this area.

b. **Zone 2 - covers approximately 75% of the property. The DNER authorizes development in this zone if adequate precautions are taken to fill the land to elevations that protect property from rising waters and/or floods.**

c. Uplands (not zoned) - located on the northwestern portion of the study area. These uplands cover approximately 10% of the study area".

"Finally, a document titled <u>Critical Coastal Wildlife Areas of Puerto Rico</u>, by Mr. Julio E. Cardona and Mr. Manuel Rivera, published by DNER in 1988, shows that there are no critical, threatened or endangered species, listed by either the Commonwealth of Puerto Rico or the Federal Government, in the property owned by Mr. Piza nor in the adjacent hill ("Cerro Guarico")." Gaztambide Decl. at pp. 2-3. (Emphasis added.)

It is important for this Court to be informed that over 75% of the Defendant's property is not to a prohibition against residential use and lot subdivision due to a B-2 zoning as Mr. Ferrer opined. To the contrary Mr. Gaztambide's Declaration makes it clear that Mr. Piza has in fact obtained approval for residential development up to R-3

equivalent density within the **eastern** portion of the main tract, not just within the western portion of the tract as incorrectly stated by Mr. Ferrer. The Gaztambide Declaration lists numerous instances of such development in and around the Pizá tract. See Gaztambide Decl. nos. 2, 9, 10, 11, 12, 14, 16, 17, 18, 19, 28.

The incontrovertible evidence shows that zoning restrictions do not prevent this Court from concluding that the Condemned Parcel shared the required "unity of use" with the upland portion of the main tract. The surrounding upland is in fact being developed for commercial and residential use which, therefore, requires this Court to value the Condemned Parcel under the highest and best use standard and as independent parcel.

The remaining argument raised by the Government concerns possible ecological concerns which would impose building and use restrictions within the subject property. This argument also fails to overcome the actual evidence before this Court. The Gaztambide Declaration explains:

"3.   It is pertinent to mention that the western portion of the main tract (which is not where the condemned parcel is located) abuts the Tortuguero Lagoon and therefore is the most sensitive area of the entire property due to this proximity to the body of water which the zoning of the area pretends to protect. Notwithstanding this sensitivity, a restaurant was approved within the western portion.

4.   The B-2 zoning is not a definite negation to development because R-1 and R-3 equivalent subdivisions have been approved not only on the main tract owned by Mr. Pizá Blondet but in numerous properties that have this zoning and subsequently were approved for development presumably because these do not represent and adverse factor with respect to the protection of the lagoon. To that effect we are presenting an aerial photograph showing numerous residential developments east and south of this lagoon. (Defendant's Exhibit 19)

5.   A study which will be included as an exhibit to this response reflects that the superficial and subsurface runoff of the subject property flows in an easterly direction away from the lagoon. Therefore, the main farm and the subject property do not represent a threat to the lagoon. The residential developments directly south of the lagoon are built

on land that **appear to drain** into the lagoon, yet development was approved. (Defendant's Exhibit 20)

> Given the aforementioned determinations that the runoff of the properties east of Road 687 do not affect the lagoon, the property to the immediate east of Mr. Pizá's main tract was removed from the B-2 district. Now the line that depicts the B-2 district runs along Mr. Pizá's main tract east boundary. It is highly suspicious because the conditions of the property to the immediate east of the main tract are similar to those of the main tract. The boundary between two properties do not constitute a boundary between eco-systems especially if both properties have similar characteristics. (Defendant's Exhibits 21- 22).

7. In addition to the above, Road 687 was identified in another study prepared by the Puerto Rico Department of Natural Resources as a man-made barrier between Mr. Pizá's main tract and the lands that drain into the lagoon. Therefore this is another factor that isolates the subject away from those properties that may be considered a threat to the lagoon. (Defendant's Exhibit 25).

8. Mr. Gonzalo Ferrer recognizes that the portion of the main tract closer to the lagoon has been the subject of approval for residential developments, a restaurant, and a gasoline service station. It is pertinent to mention that this portion is closer to the lagoon; yet, it was approved for development. Therefore, it is contradictory to state that the portion (the subject) farther away from the lagoon has more restrictions than the portion closer to the lagoon. This is further confirmed by the aforementioned facts that the portion where the subject is located enjoys a man-made barrier between the subject's area and the lagoon coupled with the now known fact that the eastern portion of the main tract drains away from the lagoon.

9. With respect to the aerial photograph included as an exhibit of this document it is important to point out:

 a) a significant number of houses (approximately 600) have been developed west of Road 687 at a very short distance from the shoreline of the lagoon.

 b) 72 walk-up units are under construction on the east side of Road 687 as part of a remnant of another residential development in excess of 200 units.

 c) There is a ten store commercial project under development in the neighborhood.

 d) Brisas de Tortuguero Community is encroaching the Piza tract in an area that could be approximately 20 acres. The government "motu-propio" has changed the zoning of this portion of the main tract from B-2 to developed area (A-D). Therefore, the government may forego the B-2 zoning declaring as developable a portion of the tract but wants to enforce the B-2 zoning on the portion that it wants to condemn. (Defendant's Exhibits 21-22)."

It is clear from the evidence before this Court that no ecological considerations prevent the development of the subject property for residential or commercial use. The factual reality is that this type of development has and continues to occur in and around the main Piza tract. It is respectfully submitted that the evidence before this Court shows that development for commercial and residential use is continuously occurring in both the "eastern" and "western" portion of the Pizá tract. The Government's condemnation of the subject property "the hole in the donut" deprived Mr. Pizá of his right to development this parcel for the same use which the remainder of his "**upland**" is being used for. The Condemned Parcel should, therefore, be valued under the highest and best use standard during the trial of this matter.

**Conclusion**

It is respectfully submitted that the Defendant Pizá-Blondet has supplied this Court with sufficient evidence to show that the highest and best use standard should be applied during the trial of this matter. The Defendant has demonstrated actual development of his upland for commercial and residential use and has further shown that no zoning or ecological considerations prevented the Condemned Parcel from being put to the same use. This Court has previously held that Mr. Pizá needed only to show "unity of use" to satisfy his burden of being entitled to the highest and best use standard. It is respectfully submitted that Mr. Pizá has overwhelmingly met this burden.

RESPECTFULLY SUBMITTED,

_____
Francisco Diez, (Bar Roll No.)
652 Muñoz Rivera
Suite 3125
San Juan, Puerto Rico 00918-4281
Telephone: (787) 250-0220
Telecopier: (787) 250-0295

**Certificate of Service**

I HEREBY CERTIFY that I have on this _____ day of May, 2005, served a copy of the above and foregoing upon counsel of record, by electronic mail and, or by placing a copy of same in the United States Mail, properly addressed and postage prepaid.

_____
Francisco Diez

Copies to:

JOSE M. PIZARRO ZAYAS
Assistant U.S. Attorney
Room 452 Federal Building
Hato Rey, Puerto Rico 00918
Tel. 766-5656

PAUL HARRISON
JEFFREY M. TAPICK
Attorneys, U.S. Department of Justice
Environment and Natural Resources Division
P.O. Box 561 - Ben Franklin Station
Washington, D.C. 20044
Telephone:	202-305-0299
Fax:		202-305-0398