UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL NO. 98-1664 (GAG) |
| | ) | CIVIL NO. 98-2344 (GAG) |
| vs. | ) | Consolidated Cases |
| | ) | |
| 33.92536 ACRES OF LAND, MORE | ) | |
| OR LESS, SITUATED IN VEGA BAJA, | ) | |
| COMMONWEALTH OF PUERTO RICO, | ) | |
| AND JUAN PIZA BLONDET, AND | ) | |
| UNKNOWN OWNERS | ) | |
| | ) | |
| Defendants. | ) | |

**UNITED STATES' FIRST MOTION IN LIMINE
TO EXCLUDE ALL EVIDENCE RELATING TO DEFENDANT'S
APPRAISAL OF SAND DEPOSITS**

Plaintiff United States of America (the "United States") respectfully submits this First Motion in Limine and Memorandum of Law to Exclude All Evidence Relating to Defendant's Appraisal of Sand Deposits. Defendant intends to proffer evidence based on two separate appraisals of the condemned property: one that values the fee simple interest, and another that values sand deposits on the property. The evidence based on the appraisal of the sand deposits is inadmissible as a matter of law because: (1) this appraisal values lost business income, which is not compensable under the Fifth Amendment and Supreme Court precedent; and (2) this appraisal violates the "unit rule" by valuing the mineral estate separately from the fee simple interest, which results in double-counting any value for the sand deposits. In addition, the opinions expressed in this appraisal are not based upon sufficient facts or data to be admissible under federal case law or the Federal Rules of Evidence. For these reasons, the United States asks the Court to exclude all evidence based on Defendant's appraisal of the sand deposits.

**STATEMENT OF FACTS**

On December 2, 1998, the United States filed a Complaint in Condemnation (Docket Entry 1) and a Declaration of Taking to acquire the fee simple interest in approximately 33.05 acres of land, together with a non-exclusive access easement over an adjacent 0.87 acres of land. These 33.92 acres (the "Subject Property") were acquired by the Federal Aviation Administration for the continued operation of a non-directional radio beacon facility in Vega Baja, Puerto Rico.[1]

Defendant landowner Juan Piza-Blondet ("Defendant") has retained appraiser Carlos E. Gaztambide, MAI, to offer an expert opinion of the market value of the Subject Property. Mr. Gaztambide prepared two separate written appraisal reports that together represent the valuation evidence that Defendant intends to offer at trial. Counsel for Defendant has stipulated that any valuation testimony offered by Mr. Piza-Blondet will not differ from Mr. Gaztambide's.

A.   The Fee Simple Appraisal

Mr. Gaztambide's first report, dated June 13, 2005, appraises the "fee simple estate" in the Subject Property. See Fee Simple Appraisal 1 (Ex. A). The Dictionary of Real Estate Appraisal defines fee simple estate as "absolute ownership unencumbered by any other interest or estate, subject only to the limitations imposed by the governmental powers of taxation, eminent domain, police power, and escheat." Dictionary of Real Estate Appraisal 113 (4th ed. 2002) (Ex. B). Mr. Gaztambide explained that the fee simple estate means the "full bundle" of property rights associated with the real estate, including all the rights of use and enjoyment in the

---

[1] For a more detailed background and procedural history, please refer to the Joint Status Memorandum filed on May 23, 2006 (Docket Entry 125).

property.  Gaztambide Dep. 65:3-15 (Ex. C).

Mr. Gaztambide utilized the "Direct Sales Comparison Approach" appraisal methodology to ascertain the value of the fee simple estate.  Fee Simple Appraisal 68 (Ex. A).  In applying that approach, Mr. Gaztambide first analyzed the Subject Property's highest and best use so as to guide his choice of comparable sales.  Id. 35.  He determined that the fee simple estate consists of two separate components: uplands and wetlands.  Id. 35-39.  For the uplands component (approximately 19 acres), he opined that the highest and best use was residential development.[2]  Id.  For the wetlands component (approximately 15 acres), he found that the highest and best use was mitigation.  Id.

To ascertain the value of the uplands component, Mr. Gaztambide examined three sales located in "the same neighborhood" as the Subject Property.  Id. 61, 63.  Each of these three sales had a highest and best use of residential development, and sold on the market for approximately $50,000 per acre for the fee simple interest.  Id. To value the wetlands component, Mr. Gaztambide examined six sales of wetlands properties, located in various parts of Puerto Rico, that sold for approximately $9,000 per acre.  Id. 64-67.

Based on his analysis of comparable sales, Mr. Gaztambide concluded that the market value for the uplands component of the fee simple was roughly $980,000, while the market value

---

[2] By separate motion and memorandum filed contemporaneously with this motion, the United States asserts that the Court should exclude all evidence premised on Defendant's proposed highest and best uses of residential development and sand extraction because Defendant has failed to meet its burden of showing that these uses are reasonably probable in the reasonably near future.  By contrast, this motion in limine seeks to exclude all evidence based on Defendant's appraisal of the sand deposits because this appraisal (1) values non-compensable business income; (2) violates the "unit rule" which results in impermissible double-counting of any value for the sand deposits; and (3) is not based on sufficient facts or data.

for the wetlands component was roughly $140,000.  Id. 63, 67.  Accordingly, Mr. Gaztambide determined that the total market value for the fee simple interest in the Subject Property as of the date of taking was $1,120,000.  Id. 68.

    B.    The Sand Deposits Appraisal

Mr. Gaztambide's second report appraises sand deposits located on the Subject Property.  See Sand Appraisal 1 (Ex. D).  Sand deposits are mineral interests that make up part of the "mineral estate," which is a subset of the fee simple estate.  See The Appraisal of Real Estate (12th ed. 2001) 217-18 (Ex. E).

Mr. Gaztambide admits that he is not an expert in the field of sand extraction.  Gaztambide Dep. 181:3-6 (Ex. C).  Accordingly, for this appraisal, Mr. Gaztambide relied on the work of Dr. James Joyce, Ph.D., an expert geologist.  Id. 179:13-21.  Mr. Gaztambide asked Dr. Joyce to provide an analysis of the quantity, quality, and marketability of the sand deposits on the Subject Property.  Id. 182:9-20.  Dr. Joyce reported that the Subject Property, along with all of the surrounding area in the vicinity of the Tortuguero Lagoon, was shown on the U.S. Geological Survey map to contain a minimum of two meters of silica sand.  Joyce Report 2-3 (Ex. F); Joyce Dep. 133:20-24, 134:1-9 (Ex. G).  Dr. Joyce also opined that these silica sand deposits are suitable for extraction and sale.  Joyce Report 10 (Ex. F); Sand Appraisal 23-24 (Ex. D).

Based on Dr. Joyce's findings, Mr. Gaztambide stated that the highest and best use for the mineral estate of the Subject Property is extraction and sale of the sand deposits.  Gaztambide Dep. 191:17-20 (Ex. C).  Mr. Gaztambide used the income approach to capitalize the anticipated business income that would be generated by a hypothetical sand extraction

enterprise on the Subject Property.  Id. 185:14-23, 187:7-14; Sand Appraisal 27 (Ex. D).

In performing the income approach, Mr. Gaztambide capitalized an "annuity income stream" using the price of sand, the cost of extracting sand, and the discount rate as factors that determine the present value of the anticipated business income.  Sand Appraisal 27-30 (Ex. D).  The appraisal report does not explain why or how Mr. Gaztambide selected a 15% discount rate to calculate the present value of the anticipated business income.  Id.  At his deposition, Mr. Gaztambide stated that his selection of the 15% discount rate was a "judgment call," and that there is no market evidence or data to support this figure.  Gaztambide Dep. 220:3-11 (Ex. C).  Mr. Gaztambide further admitted that neither his report nor his work file contain any facts or data to support the estimates he used regarding the price of sand ($30 per ton) or the costs of extracting sand (20% of gross income).  Id. 215:17-24, 217:10-24, 218:1-15.  Based on his income capitalization analysis, Mr. Gaztambide concluded that the value of the sand deposits ranged from $3,000,000 to $6,000,000.  Sand Appraisal 30 (Ex. D).

**STANDARD OF REVIEW**

A.  The Judge in an Eminent Domain Case Is to Decide All Legal and Factual Issues Other Than the Precise Issue of Just Compensation.

The substantive legal issues that arise in this federal eminent domain proceeding are governed by federal law, and procedural matters are controlled by Rule 71A of the Federal Rules of Civil Procedure.  See Kirby Forest Indus., Inc. v. United States, 467 U.S. 1, 3-5 (1984); Fed. R. Civ. P. 71A.  The parties have requested a trial by jury, and the Supreme Court has stated that the "single narrow" function of a jury in an eminent domain case is "the determination of a compensation award within ground rules established by the trial judge."  United States v. Reynolds, 397 U.S. 14, 20 (1970) (citing Fed. R. Civ. P. 71A(h)).

Rule 71A(h) of the Federal Rules of Civil Procedure states that while the discreet issue of just compensation may be decided by a jury, "Trial of all issues shall otherwise be by the Court." Fed. R. Civ. P. 71A(h). The Supreme Court has interpreted Rule 71A(h) to mean that "except for the single issue of just compensation, the trial judge is to decide all issues, legal and factual, that may be presented." Reynolds, 397 U.S. at 19. Thus, under Rule 71A, the trial court is to decide all preliminary questions concerning what evidence a jury may consider in determining the ultimate question of just compensation. See United States v. 320.0 Acres of Land, 605 F.2d 762, 814-15 (5th Cir. 1979); United States v. Certain Land Situated in the City of Detroit, 450 F.3d 205, 211 (6th Cir. 2006) (affirming district court's exclusion of valuation evidence from jury).

    B.    The Court Should Exclude Evidence That Fails to Meet the Relevance or Reliability Standards of the Federal Rules of Evidence.

Rule 104(a) of the Federal Rules of Evidence states that, "Preliminary questions concerning . . . the admissibility of evidence shall be determined by the court, subject to the provisions of subdivision (b)." Fed. R. Evid. 104(a). Rule 702 of the Federal Rules of Evidence states that:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. The Supreme Court has held that the trial judge has a "gatekeeping role" under Rule 104(a) to determine whether expert testimony is both relevant and reliable in order to be admissible under the Federal Rules of Evidence. See Daubert v. Merrill Dow Pharm., Inc.,

6

509 U.S. 579, 589-90 (1993); <u>Kumho Tire Co., Ltd. v. Carmichael</u>, 526 U.S. 137, 152 (1999). If the trial court determines that the expert opinion testimony does not meet these standards, the court should exclude that evidence from use at trial. <u>See</u>, <u>e.g.</u>, <u>Gen. Elec. Co. v. Joiner</u>, 522 U.S. 136, 142-44 (1997) (affirming exclusion of unreliable expert opinion testimony).

**ARGUMENT**

The United States respectfully moves this Court to exclude all evidence based on Defendant's appraisal of the sand deposits. This appraisal values the lost business income from a hypothetical sand extraction operation. It is black letter law that lost business income is not recoverable as part of just compensation in a federal eminent domain case. Defendant's sand deposit appraisal also violates the "unit rule" by appraising the mineral estate separately from the fee simple estate. This results in impermissible double-counting, because any value attributable to the sand deposits already would be included in Defendant's separate appraisal of the fee simple interest. Due to these violations of fundamental principles of federal eminent domain law, all evidence based on Defendant's appraisal of the sand deposits is inadmissible under the Fifth Amendment and Supreme Court precedent. In addition, the opinions of value expressed in Defendant's appraisal of the sand deposits are not properly based on sufficient facts and data to be admissible. Accordingly, the Court should exclude all evidence based on Defendant's appraisal of the sand deposits, including any opinions of value for the sand deposits offered by Mr. Gaztambide, Mr. Piza-Blondet, or any other witness for Defendant.

    A.    <u>Defendant's Appraisal of the Sand Deposits Values Lost Business Income That Is Not Compensable Under the Fifth Amendment and Supreme Court Precedent.</u>

It is undisputed that Defendant's appraisal of the sand deposits capitalizes the lost business income from a hypothetical sand extraction operation on the Subject Property. Sand

Appraisal 27 (Ex. D); Gaztambide Dep. 185:14-23, 187:7-14 (Ex. C). It is well-settled that business income and lost profits are not recoverable in an eminent domain action. See United States ex rel. Tenn. Valley Auth. v. Powelson, 319 U.S. 266, 281-86 (1943); United States v. Gen. Motors Corp., 323 U.S. 373, 379-80 (1945); Baetjer v. United States, 143 F.2d 391, 395-96 (1st Cir. 1944). As the Supreme Court has observed, "There are numerous business losses which result from condemnation of properties but which are not compensable under the Fifth Amendment." Powelson, 319 U.S. at 281 (profits from a proposed hydroelectric plant on the condemned land were business losses that could not be recovered as part of just compensation).[3]

In cases involving the taking of land that contains mineral deposits, courts have refused to consider evidence of value that is based on lost income or profits from a proposed or hypothetical mining business. See Cloverport Sand & Gravel Co., Inc., v. United States, 6 Cl. Ct. 178, 190-92 (Ct. Cl. 1984); United States v. 91.90 Acres of Land, 586 F.2d 79, 86-88 (8th Cir. 1978), cert. denied, 441 U.S. 944 (1979). In Cloverport, a witness for the landowner in a takings case offered valuation testimony that was based on the capitalization of lost profits from a proposed sand and gravel mining business on the property. Cloverport, 6 Cl. Ct. at 191. The court stated:

> In considering appraisals based on income capitalization, the Court must draw a distinction between the capitalization of income generated by the property itself and income derived from a business conducted on the property . . . It is well-settled that, at least within the context of an action for

---

[3] In light of the non-compensability of lost business income, the proper way to value mineral deposits is to capitalize the rental, or royalty, income that could be generated by the property itself, rather than the income from a business on the property. See United States v. 103.38 Acres of Land, 660 F.2d 208, 212-13 (6th Cir. 1981). Mr. Gaztambide admitted at deposition that he did not capitalize the royalty income that could be generated by the Subject Property. Gaztambide Dep. 186:4-7, 187:8-14 (Ex. C).

> just compensation under the Fifth Amendment, injuries to a landowner's
> business are not compensable.

Id. at 191, 193. The court in Cloverport held that "The appraisal was, in effect, a valuation of Cloverport's sand and gravel business, and must be rejected." Id. at 194. Similarly, in 91.90 Acres of Land, the landowner offered an opinion of value that was based on the capitalization of income from the business of mining clay deposits. The court rejected the landowner's valuation testimony because, among other things, it was based on non-compensable lost business income. 91.90 Acres of Land, 586 F.2d at 88.

Like the opinions of value in Cloverport and 91.90 Acres of Land, Defendant's appraisal of the sand deposits is based on the capitalization of lost business income from a hypothetical mining operation. Accordingly, the appraisal of the sand deposits is inadmissible as a matter of law, and the Court should exclude all evidence based on this appraisal from trial. See Cloverport, 6 Cl. Ct. at 191; 91.90 Acres of Land, 586 F.2d at 88; Powelson, 319 U.S. at 281-83.

    B.    Defendant's Appraisal of the Sand Deposits Violates the Unit Rule and Results in Impermissible Double-Counting of Any Value for the Sand Deposits.

Another reason that the Court should exclude all evidence based on Defendant's appraisal of the sand deposits is that it violates the "unit rule" by separately valuing the mineral estate from the fee simple interest. The unit rule is a well-established principle of federal eminent domain law requiring property in a condemnation action to be valued as a single, integrated whole and not based on its individual components. See 91.90 Acres of Land, 586 F.2d at 87; United States v. 158.76 Acres of Land, 298 F.2d 559, 561 (2nd Cir 1962). The unit rule prohibits a landowner from separately valuing the various components of the condemned land. When land contains mineral deposits, a landowner may not separately appraise the mineral

> just compensation under the Fifth Amendment, injuries to a landowner's
> business are not compensable.

Id. at 191, 193. The court in Cloverport held that "The appraisal was, in effect, a valuation of Cloverport's sand and gravel business, and must be rejected." Id. at 194. Similarly, in 91.90 Acres of Land, the landowner offered an opinion of value that was based on the capitalization of income from the business of mining clay deposits. The court rejected the landowner's valuation testimony because, among other things, it was based on non-compensable lost business income. 91.90 Acres of Land, 586 F.2d at 88.

Like the opinions of value in Cloverport and 91.90 Acres of Land, Defendant's appraisal of the sand deposits is based on the capitalization of lost business income from a hypothetical mining operation. Accordingly, the appraisal of the sand deposits is inadmissible as a matter of law, and the Court should exclude all evidence based on this appraisal from trial. See Cloverport, 6 Cl. Ct. at 191; 91.90 Acres of Land, 586 F.2d at 88; Powelson, 319 U.S. at 281-83.

    B.    Defendant's Appraisal of the Sand Deposits Violates the Unit Rule and Results in Impermissible Double-Counting of Any Value for the Sand Deposits.

Another reason that the Court should exclude all evidence based on Defendant's appraisal of the sand deposits is that it violates the "unit rule" by separately valuing the mineral estate from the fee simple interest. The unit rule is a well-established principle of federal eminent domain law requiring property in a condemnation action to be valued as a single, integrated whole and not based on its individual components. See 91.90 Acres of Land, 586 F.2d at 87; United States v. 158.76 Acres of Land, 298 F.2d 559, 561 (2nd Cir 1962). The unit rule prohibits a landowner from separately valuing the various components of the condemned land. When land contains mineral deposits, a landowner may not separately appraise the mineral

deposits and add their value to the value of the surface estate. 158.76 Acres of Land, 298 F.2d at 561 ("it is not permissible to determine separately the value of the mineral deposit and add this to the value of the land as a unit."); Georgia Kaolin Co. v. United States, 214 F.2d 284, 286 (5th Cir. 1954) ("there can be no recovery for both the value of the land and its mineral deposits as two separate items"). As the Eighth Circuit explained:

> In the case of land that is underlaid with marketable minerals . . . the existence of those minerals is a factor of value to be considered in determining the market value of the property, *but the landowner is not entitled to have the surface value of the land and the value of underlying minerals aggregated to determine market value.* The value of the mineral deposit is to be considered only to the extent to which it goes into and affects the over-all market value of the property.

91.90 Acres of Land, 586 F.2d at 87 (emphasis added).

Defendant's appraisal of the sand deposits violates the unit rule because it values the minerals separately from the rest of the condemned land. This violation of the unit rule results in impermissible double-counting of the sand deposits, because any value attributable to the sand deposits already would be included in Mr. Gaztambide's appraisal of the fee simple estate.[4] Although Mr. Gaztambide stated that his appraisal of the fee simple "excludes the value of the sand deposits," the fee simple estate by definition *includes* the lesser mineral estate and the sand deposits that it contains. See Dictionary of Real Estate Appraisal 113 (Ex. B). Thus, the appraisal of the fee simple estate not only values the surface of the Subject Property, but also includes the value of the mineral estate, including any value attributable to the sand deposits.

A condemnation action involving similar facts illustrates this double-counting of the sand

---

[4] The property interest acquired by the United States in this case is the fee simple interest. Just compensation should be measured only by the fair market value of the fee simple interest, and not by the value for any other property interest. See generally Kirby Forest, 467 U.S. at 9-10.

10

deposits. See United States v. 13.98 Acres of Land, 702 F. Supp. 1113, 1123-25 (D. Del. 1988). In that case, the court ruled that a landowner could not recover additional value for soil deposits on his land because any such value already was reflected in the value of the fee simple estate. Id. The court noted that each of the comparable sales used to appraise the property "contains soil similar to that of the subject property," and that the purchasers "implicitly if not explicitly took into consideration any value inherent in the land" as a source for soil deposits. Id. at 1123-24. Thus, to allow the landowner to receive additional value for the soil deposits would be "to improperly sanction double counting," since the value of the soil is already included in the value of the land as a whole. Id. at 1123.

Here, as was the case in 13.98 Acres of Land, all three of the residential comparable sales that Mr. Gaztambide used to determine the value of the fee simple estate contain silica sand deposits just like those found on the Subject Property.[5] See Gaztambide Comparable Sales Exhibit (Ex. H). According to Dr. Joyce, the U.S. Geological Survey map indicates that there is silica sand present throughout the vicinity of the Tortuguero Lagoon. Joyce Dep. 133:21-24, 134:1-10 (Ex. G). Indeed, by examining the location of Mr. Gaztambide's three comparable sales as depicted on the U.S. Geological Survey Map, it is readily apparent that there were silica sand deposits underlying all three comparable sales. See Gaztambide Comparable Sales Exhibit (Ex. H). Since all three of these properties contain silica sand deposits, the $50,000 per acre average purchase price for the fee simple interest in these properties reflects any value that is due

---

[5] It is not relevant whether the six comparable sales that Mr. Gaztambide used to appraise the wetlands component also contain sand deposits, because Dr. Joyce stated that sand extraction is not permitted in wetlands. See Joyce Report 8 (Ex. F); Joyce Dep. 58:2-12 (Ex. G). Therefore, the value of the wetlands component of the fee simple interest in the Subject Property would not include any contributory value of sand deposits.

to the presence of sand deposits.  See 13.98 Acres of Land, 702 F.Supp. at 1123-25.

Consequently, Mr. Gaztambide's appraisal of the fee simple estate that is based on the $50,000 per acre price of these comparable sales already includes any value for sand deposits located on the Subject Property.  The separate appraisal of the sand deposits therefore double-counts their value.  Accordingly, all evidence based on this appraisal of the sand deposits is inadmissible as a matter of law and should be excluded from trial.  See 91.90 Acres of Land, 586 F.2d at 87; Morton Butler Timber Co. v. United States, 91 F.2d 884, 888 (6th Cir. 1937) (affirming exclusion of testimony that separately valued timber from surface estate); 13.98 Acres of Land, 702 F. Supp. at 1123-25.

    C.    The Opinions Expressed in Defendant's Appraisal of the Sand Deposits Are Not Based On Sufficient Facts or Data to Be Admissible Under Federal Law.

The opinions of value expressed in Defendant's appraisal of the sand deposits are also inadmissible under federal case law and the Federal Rules of Evidence because they are not based on sufficient facts or data.  Courts have consistently rejected opinions of value when there is a lack of objective factual data or evidence to support the appraiser's calculations.  See United States v. 47.14 Acres of Land, 674 F.2d 722, 726 (8th Cir. 1982); United States v. Whitehurst, 337 F.2d 765, 776 (4th Cir. 1963) (holding that capitalization of income method should be rejected as speculative where factors were without "objective evidential support").  As the Eighth Circuit explained:

> [T]he capitalization of income method may be appropriate in certain cases, but where such method is used all of the factors that must necessarily be taken into account should be established by proper evidence.  Where several of the elements or factors . . . are without objective evidential support, that method is faulty and can obviously lead to unfounded and enhanced valuations.

47.14 Acres of Land, 674 F.2d at 726.  Accordingly, when appraisers have made assumptions or

otherwise neglected to provide objective proof to support their calculations, courts have ruled that their opinion testimony lacks proper support and should be excluded. See 47.14 Acres of Land, 674 F.2d at 727-28 (rejecting appraiser's opinion that made unsupported assumptions regarding rate of mineral extraction); United States v. 158.76 Acres of Land, 298 F.2d at 561 (rejecting appraiser's opinion that failed to provide objective support for capitalization rate).

      Here, Defendant has failed to provide any objective factual data or evidence to support the calculations utilized by Mr. Gaztambide in appraising the value of the sand deposits. In this appraisal, Mr. Gaztambide capitalized a hypothetical income stream using such factors as the price of sand, the cost of extracting sand, and the discount rate that should be applied to determine the present value of the anticipated income. See Sand Appraisal 27-30 (Ex. D). However, Mr. Gaztambide does not explain how or why he selected factors such as the 15% discount rate. Id.. At his deposition, Mr. Gaztambide stated that his selection of the 15% discount rate was a "judgment call," and that he is not aware of any market evidence or other objective support for this figure. Gaztambide Dep. 220:3-11 (Ex. C). Mr. Gaztambide further admitted that there is no evidence in his report or work file to support the estimates he used regarding the price of sand ($30 per ton) or the costs of extracting sand (20% of gross income). Id. 215:11-21, 217:10-24, 218:1-15.

      Because there is no objective factual data to support Mr. Gaztambide's opinion of value for the sand deposits, his opinion is inadmissible under federal case law. See 47.14 Acres of Land, 674 F.2d at 726; 158.76 Acres of Land, 298 F.2d at 561; Whitehurst, 337 F.2d at 776. Moreover, Mr. Gaztambide's failure to provide any facts or data for his calculations – other than his unsupported "judgment call" – renders his opinion of value inadmissible under Rule 702 as

13

well. As the Supreme Court has stated, "Nothing in either <u>Daubert</u> or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." <u>Joiner</u>, 522 U.S. at 146. The Court should exclude all evidence based on the opinion of value expressed in Defendant's appraisal of the sand deposits.

## CONCLUSION

The evidence that is based on Defendant's appraisal of sand deposits on the Subject Property is inadmissible as a matter of law and should be excluded from the jury's consideration. Defendant's appraisal breaches fundamental tenets of federal eminent domain law because it (1) values non-compensable business income; and (2) violates the unit rule, resulting in double-counting of any value for the sand deposits. In addition, the opinions expressed in this appraisal are not based on sufficient facts or data. For these reasons, the Court should exclude all evidence relating to Defendant's appraisal of the sand deposits, including any testimony by Mr. Gaztambide, Mr. Piza-Blondet, or any other witness for the Defendant concerning the value of sand deposits on the Subject Property.

Respectfully submitted this 14th day of August 2006.

                                    H.S. GARCIA
                                    United States Attorney

                                    JOSE M. PIZARRO-ZAYAS
                                    Assistant United States Attorney
                                    Torre Chardon, Suite 1201
                                    350 Carlos Chardon Ave.
                                    San Juan, PR 00918
                                    Tel: (787) 766-5656
                                    Fax: (787)766-6219

                                    SUE ELLEN WOOLDRIDGE
                                    Assistant Attorney General

                                    s/ Jeffrey M. Tapick
                                    JEFFREY M. TAPICK
                                    Attorney, United States Department of Justice
                                    Environment & Natural Resources Division
                                    P.O. Box 561, Ben Franklin Station
                                    Washington, D.C. 20044
                                    Tel: (202) 305-0297
                                    Fax: (202) 305-0398

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 14th day of August 2006, a true and correct copy of the foregoing motion was served via email and electronic notification to:

>Maurice V. Piza, Esq.
>5500 Prytania Street
>New Orleans, LA 70115
>maurpi1@yahoo.com
>
>David C. Vidrine, Esq.
>2000 Old Spanish Trail, Suite 103
>Slidell, LA 70458
>DVidrine@mumphreylaw.com

>s/ Jeffrey M. Tapick
>
>JEFFREY M. TAPICK