UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA, | CIVIL NO. 98-1664 (GAG) |
| PLAINTIFF | Consolidated Cases |
| vs. | |
| 33.92536 ACRES OF LAND, MORE OR LESS SITUATED IN VEGA BAJA, COMMONWEALTH OF PUERTO RICO, AND JUAN PIZA BLONDET, AND OTHER UNKNOWN OWNERS | |
| DEFENDANTS | |

**Defendant's Opposition to United State's First Motion in Limine
To Exclude All Evidence Relating to Defendant's Appraisal of Sand Deposits**

**MAY IT PLEASE THE COURT:**

The United States seeks to exclude All Evidence Relating to Defendant's Appraisal of Sand deposits. The arguments raised by the United States lack merit and must be rejected by this Honorable Court. The methodology employed by the Defendant's appraisers has been approved by numerous courts in case such as this one where the condemned property contained valuable minerals.

Argument

1. **The Defendant's Appraisal of the Sand Deposits Utilizes an Acceptable Valuation Methodology**

"Admission of expert testimony is a matter within the broad discretion of the court, and a decision to admit such testimony is to be sustained unless manifestly erroneous." United States v. Pearce, 912 F.2d 159, 163 (6th Cir.1990), cert. denied, 498 U.S. 1093,

1

111 S.Ct. 978, 112 L.Ed.2d 1063 (1991) (citing Apponi v. Sunshine Biscuits, Inc., 809 F.2d 1210, 1218 (6th Cir.), cert. denied, 484 U.S. 820, 108 S.Ct. 77, 98 L.Ed.2d 40 (1987)).

The admissibility of expert testimony is governed by Federal Rule of Evidence 702 which provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Rule 702 should be broadly interpreted on the basis of whether the use of expert testimony will assist the trier of fact.  See Davis v. Combustion Engineering, Inc., 742 F.2d 916, 919 (6th Cir.1984).   Court's have used a four-part test to uphold the admission of expert testimony:  "(1) a qualified expert (2) testifying on a proper subject (3) which is in conformity to a generally accepted explanatory theory (4) the probative value of which outweighs its prejudicial effect."  Sterling v. Velsicol Chemical Corp., 855 F.2d 1188, 1208 (6th Cir.1988).

In this particular case, the United States does not contest the qualifications of the Defendant's experts.  The issue is, therefore, whether the methodology utilized by the Defendant's experts Mr. Carlos Gaztambide and Dr. James Joyce, Ph.d. conforms to a generally accepted explanatory theory and whether their testimony has probative value.

In land condemnation proceedings, the comparable sales method of valuation is the preferred approach of establishing the fair market value of property.   However, when comparable sales do not exist, "[t]he law of evidence ... favors a broad rule of admissibility and is designed to permit the **admission of all evidence** which is relevant and material to the issues in controversy, unless there is a sound and practical reason for excluding it."

United States v. 2,847.58 Acres of Land, 529 F.2d 682, 687 (6th Cir.1976). The owner's compensation depends upon the circumstances of each case; no general formula should be used and some speculation is inherent in any valuation of resource property. See United States v. 22.80 Acres of Land, 839 F.2d 1362, 1365 (9th Cir.1988) (citing United States v. Miller, 317 U.S. 369, 373-74, 63 S.Ct. 276, 280, 87 L.Ed. 336 (1943)).

The case of the United States v. 100.80 Acres of Land, 657 F.Supp. 269 (M.D. NC 1987) is instructive. At issue was the proper valuation of land which contained, as in this case, valuable sand resources. As in this case, no comparable sales data for sand laden property exist and, therefore, the income approach is the next best approach to valuation. Every element, including the existence of mineral deposits should be considered in determining fair market value for purposes of just compensation in an eminent domain case. The court in 100.80 Acres of Land utilized a discounted income approach. **The court explained that the income generated by the mineral itself is correctly attributable to the value of the land**.

In the case before this Court both of Defendant's experts attempted to quantify the total amount of extractable minerals (silica sand) on the subject property and, thereafter, provide a discounted income value based upon the amount of the mineral itself. See Exhibit "F" to United States' First Motion in Limine. It is to be noted that the United States does not contest the accuracy of the Defendant's experts' determination of the amount and value of the silica sand----the United States has no witness which will testify concerning the sand deposits. Clearly the Defendant's experts utilized acceptable explanatory theory and the probative value of their anticipated testimony clearly outweighs its prejudicial effect.

As the court noted in 100.80 Acres of Land it is the responsibility of the court to allow opposing counsel to vigorously cross examine experts on such issues, not to exclude probative evidence.

In the case before this Court, Defendant's experts each will testify that the highest and best use for a portion of the condemned property is for sand extraction. The testimony will show that the sand is an extremely valuable and exploitable asset with a ready market for all of the and which can be extracted. The evidence will further show that Defendant Piza Blondet had in fact, prior to the Government's taking of his property exploited the sand resources by extracting the mineral for immediate sale to Owens Illinois, a major consumer of high grade silica sand. It was only due to the Government's taking of his property that Mr. Piza Blondet was unable to continue to extract the silica sand and develop the remainder of his property for residential use.

Mr. Gaztambide's testimony further establishes that the preferred method of developing the upland portion of the Piza Blondet property which was taken, would be to extract the silica sand and then fill the voided areas with more substantial dirt resources which are abundant on the property. The highest and best use of the property is, therefore, for sand extraction followed by residential development of the upland area of the property. Mr. Piza Blondet was in the practice of doing just that in and around the property in the time period when it was taken by the United States.

The United State's argument that the methodology utilized by the Defendant's experts compels their testimony and Defendant's evidence to be excluded must be rejected by this Court. See United States v. 100.80 Acres of Land; United States v. 2,847.58 Acres of Land, 529 F.2d 682 (6th Cir. 1976).

It is clear that the expected evidence and testimony by the Defendant's experts satisfies all standards for admissibility. This Court must, therefore, deny the United State's Motion in Limine.

2. **The Defendant's Valuation Methodology Does Not Violate the Unit Rule**

The United States next argues that the Defendant's expert appraisals violate the so-called unit rule by valuing the minerals located on the property. This is also incorrect. The proper valuation methodology for this complete takings case is the determination of the highest and best use. Many cases recognize that portions of property often have different "highest and best uses". No rule of law requires that the entirety of a parcel of property be suited for a single use.

The Court in United States v. 1,629.6 Acres of Land, 360 F.Supp 147 (D. Del. 1973) acknowledged that some portion of a parcel my be suited for a different purpose than the remainder of the parcel. In 1,629.6 Acres of Land, the court determined that 1,266.2 acres of the property were ideally suited for farm and recreation land and 366 acres of the property were to be utilized for a sand and gravel pit. Noting that each case depends upon its own facts, the Court then assigned a value based upon the different "uses" for which the portions of the property were best suited. This is the approach taken by the Defendant's experts in this case.

The testimony of Mr. Gaztambide reveals that the subject property is subject to mixed "highest and best uses". The property consists of uplands and wetlands. Mr. Gaztambide correctly determined that a portion of the property was best suited for sand extraction, while another portion was best suited for residential development following the extraction of unsuitable minerals and back filling the land for building. Mr. Gaztambide

5

testified that this a customary practice given the conditions which exist on the subject property and similar property.

The United States argues that Mr. Gaztambide's use of three comparable sales results in the conclusion that the value of Mr. Piza Blondet's mineral deposits were identical to the other properties. Arguing that the comparable sales of on average $50,000.00 per acre somehow establishes the value of the Defendant's property is nonsensical. There is no evidence of the kind, quality or marketability of any minerals contained on any of the properties utilized by Mr. Gaztambide for comparison purposes. This Court has no basis for concluding, therefore, that the properties utilized for comparison purposes are relevant for determining the value of the mineral deposits on the Defendant's property which was taken by the Government.

3.   **The Opinions Expressed in Defendant's Appraisals are Clearly Based upon a Sufficient Factual Basis and are Admissible**

The United States next attempts to persuade this Court that the Defendant's experts lack the required factual bases for their anticipated testimony. This argument is unavailing. Mr. Gaztambide retained the services of Dr. James Joyce, Ph.D., an expert geologist to perform the analysis of the quantity, quality and marketability of the silica sand deposits on the taken property. The factual bases for the sand valuation were provided, therefore, by Dr. Joyce, the expert geologist. In addition Mr. Gaztambide conferred with Engineer Juan Cruz to determine current market conditions for silica sand of the kind found on the Defendant's taken property. Mr. Gaztambide's testimony further reveals the Owens Illinois was a potential buyer for all of the silica sand which could be extracted from the

Defendant's property.

The Government's attempt to undermine the Defendant's expert appraisals by questioning Mr. Gaztambide concerning the silica sand evaluation which was prepared by Dr. Joyce is merely a diversionary tactic. The Government does not challenge Dr. Joyce's report or findings—the Government does not have any reports pertaining to the silica sand deposits! Mr. Gaztambide need not be an expert in minerals, sand extraction or geology—Dr. Joyce will provide the Court with that expert testimony.

Mr. Gaztambide also testified that in his professional career he has appraised quarries, therefore, providing him with the required knowledge pertaining to minerals, mineral extraction, etc. Mr. Gaztambide testified that it was based upon this prior experience and his consultation with Dr. Joyce and Mr. Cruz that formed the basis for his current opinions pertaining the silica sand located on the Defendant's property.

Mr. Gaztambide further testified that based upon his experience as an expert appraiser and with quarries, he utilized a 15% discount factor, which was part of his professional judgment and based upon prevailing real estate industry practices. See United States v. 1,629.6 Acres of Land, 360 F.Supp 147 (D. Del. 1973) (10% discount rate deemed reasonable by court.) The discount factors which were applied by Mr. Gaztambide varying with the anticipated length of extraction time for the silica sand, therefore, his expert report correctly varied the discount factor applied over time as is appropriate.

The Courts rely upon experts such as Mr. Gaztambide and Dr. Joyce to provide the benefit of their education training and experience to assist the trier of fact in evaluating the evidence before it. The courts have correctly held that any weakness of the factual basis of any expert witness's opinion, including unfamiliarity with standards, bears on the weight

of the evidence rather than admissibility.  See Upjohn v. Rochelle Laboratories, Inc. 661 F.2d 1105, 1112 (6th Cir. 1981);  United States v. 1,629.6 Acres of Land, 360 F.Supp 147 (D. Del. 1973).  The reports and expected testimony of the Defendant's experts satisfy all legal requirements for admissibility under law.  The Motion in Limine must, therefore, be denied in its entirety.

RESPECTFULLY SUBMITTED,

_____
S\Francisco Diez,
BAR ROLL NO. 215412
Attorney for JUAN PIZA BLONDET
652 Munoz Rivera
Suite 3125
San Juan, Puerto Rico 00918-4281
Telephone: (787) 250-0220
Telecopier: (787) 250-0295

—and—

J. Wayne Mumphrey
David C. Vidrine
Mumphrey Law Firm, L.L.C.
2000 Old Spanish Trail, Suite 103
Slidell, LA 70458
Telephone: (985) 649-0709
Telecopier: (985) 649-5706

Copies to:

JOSE M. PIZARRO ZAYAS
Assistant U.S. Attorney
Room 452 Federal Building
Hato Rey, Puerto Rico 00918
Tel. 766-5656

PAUL HARRISON
JEFFREY M. TAPICK
Attorneys, U.S. Department of Justice
Environment and Natural Resources Division
P.O. Box 561 - Ben Franklin Station
Washington, D.C. 20044
Telephone:   202-305-0299
Fax:         202-305-0398

**Certificate of Service**

I HEREBY CERTIFY that I have on this 26th day of September, 2006, served all counsel with a copy of the above and foregoing by email and electronic notification.

_____