UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL NO. 98-1664 (FAB) |
| | ) | CIVIL NO. 98-2344 (FAB) |
| vs. | ) | Consolidated Cases |
| | ) | |
| 33.92536 ACRES OF LAND, MORE | ) | |
| OR LESS, SITUATED IN VEGA BAJA, | ) | |
| COMMONWEALTH OF PUERTO RICO, | ) | |
| AND JUAN PIZA-BLONDET, AND | ) | |
| UNKNOWN OWNERS | ) | |
| | ) | |
| Defendants. | ) | |

**UNITED STATES' REPLY IN SUPPORT OF ITS FIRST MOTION IN LIMINE TO EXCLUDE ALL EVIDENCE RELATING TO DEFENDANT'S APPRAISAL OF SAND DEPOSITS**

Defendant's Response to the United States' First Motion in Limine (Docket Entry 146) misrepresents the facts and misconstrues the law in a fruitless attempt to show that his appraisal of the sand deposits is admissible. The United States will address each of the factual and legal inaccuracies set forth in Defendant's Response, and will further demonstrate that this improper appraisal is inadmissible as a matter of law and should be excluded from use at trial.

**I.    Defendant's Appraisal is Not Admissible Under Rules 401, 402 and 702.**

Defendant misstates the applicable standard of review for determining the admissibility of his appraisal. Defendant states that "The admissibility of expert testimony is governed by Federal Rule of Evidence 702." Def. Resp. 2 (Docket Entry 146). However, in order to be admissible, the Court must determine under Rule 104(a) whether Defendant's appraisal is both relevant and reliable. See Plf. Mem. 6-7 (Dkt. Entry 133-1). Contrary to Defendant's assertion, the relevance and reliability of Defendant's appraisal must be evaluated not only under Rule 702, but also under Rules 401-403. See United States v. 50 Acres of Land, 469 U.S. 24, 36 n.24

(1984) (noting that admissibility of valuation testimony must be evaluated under Rules 401-403 and Rules 701-705).

Rule 401 states that "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401.  Although Rule 401 broadly defines "relevant evidence," Defendant's appraisal simply is not relevant to the ultimate issue of just compensation because it values lost business income.  See Plf. Mem. 4-5.  It is undisputed that lost business income is not recoverable as part of just compensation in a federal eminent domain case.  Id. 7-8.  Because Defendant's appraisal is not relevant for determining just compensation, it is inadmissible under Rule 402.[1/]  Fed. R. Evid. 402. ("Evidence which is not relevant is not admissible.")

Rule 702 states in pertinent part that expert testimony is admissible only if "the testimony is based upon sufficient facts or data" and "the testimony is the product of reliable principles and methods." Fed. R. Evid. 702.  Defendant's appraisal does not meet either of these criteria.  First, the appraisal is not "based on sufficient facts or data" because it fails to include objective evidential support for critical components used in the appraiser's calculations of value.  See Plf. Mem. 12-14.  In addition, the appraisal is not "the product of reliable principles and methods" because: (1) it employs an improper business income approach methodology; and (2) it violates

---

[1/] Defendant cites a Sixth Circuit decision for the proposition that "[t]he law of evidence . . . favors a broad rule of admissibility and is designed to permit the admission of all evidence which is relevant and material to the issues in controversy, *unless there is a sound and practical reason for excluding it.*" United States v. 2,847.58 Acres of Land 529 F.2d 682, 687 (6th Cir. 1976) (emphasis added).  Because Defendant's appraisal seeks to recover non-compensable lost business income, there is a "sound and practical reason for excluding it" under Rule 402. Id.

the unit rule.  See Plf. Mem. 7-12.

Because it fails to meet the relevance and reliability standards of the Federal Rules of Evidence, Defendant's appraisal is inadmissible.  Although Defendant correctly notes that the Court has "broad discretion" in determining the admissibility of evidence, it would constitute an abuse of discretion to allow the jury to consider this irrelevant and unreliable appraisal at trial. See United States v. St. Michael's Credit Union, 880 F.2d 579, 601 (1st Cir. 1989) (admission of irrelevant evidence was abuse of discretion by trial court).

**II.   Defendant's Appraisal of the Sand Deposits is Not Reliable Because it Uses an Improper Appraisal Methodology and Violates the Unit Rule.**

Through a series of statements that misrepresent the facts and misconstrue the law, Defendant attempts to show that his appraisal of the sand deposits adheres to reliable principles and methods and is therefore admissible.  However, once the inaccuracies of Defendant's statements are exposed, it is readily apparent that Defendant's appraisal is not reliable because: (1) it uses an improper appraisal methodology; and (2) it violates the unit rule, which results in an improper duplication of value.

A.   Defendant's Appraisal Uses the Improper Business Income Approach to Value Non-Compensable Lost Business Income.

Defendant misrepresents the methodology used in his appraisal.  Defendant claims that his appraisal of the sand deposits uses a methodology that "has been approved by numerous courts in cases such as this one where the condemned property contains valuable minerals." Def.'s Resp. 1-3 (Dkt. Entry 146) (citing United States v. 2,847.58 Acres of Land, 529 F.2d 682 (6th Cir. 1976); United States v. 22.80 Acres of Land, 839 F.2d 1362 (9th Cir. 1988); United States v. 100.80 Acres of Land, 657 F. Supp. 269 (M.D.N.C. 1987)).  However, Defendant's

appraisal does *not* use the methodology that was approved in those federal court decisions.

The appraisal method used in the cases cited by Defendant was a royalty income approach, which capitalizes anticipated royalty payments for the condemned mineral interest. See 22.80 Acres of Land, 839 F.2d at 1363-64; 100.80 Acres of Land, 657 F. Supp. at 273-74.[2/] Defendant's appraisal does not use a royalty income approach.[3/] Plf. Mem. 8 n.3. Instead, Defendant's appraisal uses a business income approach to capitalize the anticipated business income from a hypothetical sand extraction operation. Id. 4-5, 7.

The business income approach is not a proper appraisal methodology because, as explained in Part I above, lost business income is not recoverable in a federal eminent domain case. Id. at 7-8. Even the cases cited by Defendant reject appraisals that value lost business income. See, e.g., 100.80 Acres of Land 657 F. Supp. at 277 (stating that appraisal should value "the net income from the sand itself, not the income from some business associated with it."). Defendant has failed to cite a single case approving the use of the business income approach.

B.   Defendant's Separate Appraisal of the Mineral Estate Violates the Unit Rule.

Defendant's next argument plainly miscomprehends the ambit of the unit rule. Defendant asserts that his appraisal does not violate the unit rule because "No rule of law requires that the entirety of a parcel of property be suited for a single use." Def. Resp. 4. Notwithstanding this mischaracterization, the unit rule requires that property be valued as a

---

[2/] The other federal decision cited by Defendant is inapposite because it involved the use of a "rule of thumb" valuation method, which is a methodology that was not utilized by Defendant's appraiser. See 2,847.58 Acres of Land, 529 F.2d at 685.

[3/] The proper way to value mineral interests such as sand deposits is through the royalty income approach. Plf. Mem. 8 n.3. Defendant's appraiser admitted at deposition that he did not use the royalty income approach to value the sand deposits. Id.

4

single, integrated whole.  Plf. Mem. 9.  Defendant's appraisal violates the unit rule because it separately appraises the mineral estate (sand deposits) instead of valuing the property as a single, integrated whole.[4]  See Plf. Mem. 10-11.  Defendant's statement neither refutes this fact nor explains how the separate appraisal of the mineral estate complies with the unit rule.

      C.      Defendant's Appraisal Improperly Duplicates the Value of the Subject Property.

Defendant further attempts to justify his separate appraisal of the sand deposits by claiming that his appraiser, Carlos E. Gaztambide, "determined that a portion of the property was best suited for sand extraction, while another portion was best suited for residential development following the extraction of unsuitable materials and back filling the land for building."  Def. Resp. 5.  Once again, Defendant's statement simply is not true.

In truth, Mr. Gaztambide determined that the residential development and sand extraction would both take place on the *same* portion of the Subject Property.  See Plf. Mem. 3-4; Ex. A 35-39 (Docket Entry 133-2); Ex. D 23 (Docket Entry 133-5).  Because these two uses could not be implemented on the same acreage at the same time, these uses are conflicting and incompatible.  See, e.g., United States v. 320.0 Acres of Land, 605 F.2d 762, 817 n.124 (5th Cir. 1979) (using airfield and pit mining as examples of incompatible and inconsistent uses).  Even the cases cited by Defendant state that using two different conflicting uses to value the same portion of land results in an impermissible duplication of value.  See United States v. 1,629.6 Acres of Land,

---

[4] The United States does not argue, as Defendant suggests, that the unit rule requires the Subject Property to be valued based on only one highest and best use.  Indeed, the United States has raised no objection under the unit rule to Defendant's appraisal of the fee simple estate, in which he determined that one portion of the property was best suited for the use of wetlands mitigation, while another portion was best suited for residential development.  See Plf. Mem. 2-4.  Notably, Defendant's appraisal of the fee simple estate does not violate the unit rule because it properly values the entire Subject Property as a single, integrated whole.

5

360 F. Supp. 147, 153 (D. Del. 1973) ("the Commission specifically avoided any duplication of valuation by not attributing two highest and best uses to the same acreage and by not accepting conflicting and incompatible uses.").

### III.    Defendant's Appraisal Is Not Based On Sufficient Facts or Data Because It Lacks Any Evidence to Support Its Calculations of Value

Defendant attempts to explain the lack of objective evidence in his appraisal report by claiming that his appraiser, Mr. Gaztambide, relied on his "prior experience and his consultation with Dr. Joyce and Mr. Cruz" to support his calculations of value. Def. Resp. 7. This explanation, however, once again is belied by the facts. When asked at deposition, Mr. Gaztambide admitted that he had no objective evidence in his appraisal report or his work file to support critical components of his calculations, including the price of sand ($30 per ton) and the costs of extracting sand (20% of gross income). Plf. Mem. 13. Defendant also states that Mr. Gaztambide's selection of a 15% discount rate "was part of his professional judgment and based upon prevailing real estate industry practices." Def. Resp. 7. However, at his deposition, Mr. Gaztambide stated that his selection of this discount rate was simply a "judgment call," and that he was not aware of any market evidence or other objective data to support this figure. Plf. Mem. 13. Because Defendant's appraisal is based on unsupported calculations of value, it is not admissible as evidence of value for the Subject Property. Plf. Mem. 12-14.[5]

---

[5] In addition, Mr. Gaztambide's failure to include this necessary objective support for his expert opinion of value renders his written appraisal report non-compliant with Rule 26(a)(2) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 26(a)(2) (requiring expert report to contain "the data or other information considered by the witness in forming the opinions.").

### **IV.    The Exclusion of Defendant's Appraisal Will Not Deprive Defendant of Just Compensation for the Sand Deposits.**

In his Response, Defendant falsely suggests that if the Court excludes the appraisal of the sand deposits, Defendant will not be compensated for this property interest.  Defendant states that "Every element, including the existence of mineral deposits should be considered in determining fair market value for purposes of just compensation in an eminent domain case."  Def. Resp. 3.  This statement ignores the reality that the value of the sand deposits is already included in Defendant's other appraisal, which values the fee simple estate.  Plf. Mem. 10-12.

As Defendant's expert geologist Dr. James Joyce acknowledged, the entire vicinity surrounding the Subject Property contains silica sand deposits.  Plf. Mem. 4, 11, Ex. G (Docket Entry 133-8).  Indeed, the evidence shows that the three comparable sales used in Defendant's appraisal of the fee simple all contained silica sand deposits.[6]  Id. 11, Ex. H (Docket Entry 133-9). The average sale price for these properties was approximately $50,000 per acre, which *includes* any market value for the sand deposits they contained.  See Plf. Mem. 12 (citing United States v. 13.98 Acres of Land, 702 F. Supp. 1113, 1123-25 (D. Del. 1988)).  Thus, Defendant's fee simple appraisal includes the value of the sand deposits. Plf. Mem. 12.

Defendant tries to dismiss this argument by claiming that a value of $50,000 per acre for the Subject Property is "nonsensical."  Def. Resp. 6.  However, this $50,000 value comes directly from Defendant's own appraisal report.  Even more notably, Defendant landowner Juan Piza-Blondet himself was the seller of two of the three comparable properties containing sand deposits.  See Fee Simple Appraisal Excerpts 48-49 (Ex. 1).  Mr. Piza-Blondet sold those sand-

---

[6] This evidence flatly contradicts Defendant's claim that "no comparable sales data for sand laden property exist."  Def. Resp. 3.

laden properties for $50,000 per acre roughly two years prior to the date of taking.  Id.  Thus, in his own free market transactions, Mr. Piza-Blondet did not consider a price of $50,000 per acre for property containing silica sand to be "nonsensical."

Defendant further misleads the Court by claiming that the taking prevented Mr. Piza-Blondet from extracting and selling sand from the Subject Property.  Defendant asserts that "Defendant Piza-Blondet had in fact, prior to the Government's taking of his property exploited the sand resources by extracting the mineral for immediate sale to Owens Illinois, a major consumer of high grade silica sand." Def. Resp. 4.  Defendant goes on to state that "It was only due to the Government's taking of his property that Mr. Piza Blondet was unable to continue to extract the silica sand and develop the remainder of his property for residential use." Id.

Like many assertions in his Response, Defendant fails to support these statements with any citation to the record, in violation of Local Rule 7.1(a).  In fact, these statements are flatly contradicted by the deposition testimony of Defendant's own witnesses.  Mr. Piza-Blondet expressly stated that he had *not* extracted any sand from the Subject Property.[7] See Piza-Blondet Dep. 11:16-23 (Ex. 2).  In addition, Mr. Gaztambide admitted that he has seen no evidence demonstrating that Mr. Piza-Blondet had obtained permits to extract silica sand from the Subject Property.  See Gaztambide Dep. 198:19-24, 199:1-6 (Ex. 3). Once again, Defendant has grossly misrepresented the facts in an attempt to justify the separate appraisal of the sand deposits.

---

[7] Furthermore, Defendant's statements gloss over the fact that a permit is necessary in order to legally extract sand.  By separate motion currently pending before this Court, the United States argues that Defendant has failed to present sufficient evidence that it was reasonably probable that such permits to allow sand extraction could be obtained.  See Plf. Motion to Exclude Def. Highest and Best Use 7-8, 13-15  (Docket Entry 132-1).

## CONCLUSION

Defendant's Response is replete with legal and factual inaccuracies that obfuscate the underlying issues. Regardless of whether these erroneous statements were the product of innocent mistake or deliberate chicanery, they cannot hide the fact that Defendant's appraisal of the sand deposits is neither relevant nor reliable for determining the amount of just compensation owed for the taking of the Subject Property. Accordingly, Defendant's appraisal of the sand deposits is inadmissible as a matter of law, and all evidence based on this improper appraisal should be excluded from use at trial.

Respectfully submitted this 11th day of October 2006.

          ROSA E. RODRIGUEZ-VELEZ
          United States Attorney

          JOSE M. PIZARRO-ZAYAS
          Assistant United States Attorney
          Torre Chardon, Suite 1201
          350 Carlos Chardon Ave.
          San Juan, PR 00918
          Tel: (787) 766-5656
          Fax: (787)766-6219

          s/ Jeffrey M. Tapick
          JEFFREY M. TAPICK
          Attorney, United States Department of Justice
          Environment & Natural Resources Division
          P.O. Box 561, Ben Franklin Station
          Washington, D.C. 20044
          Tel: (202) 305-0297
          Fax: (202) 305-0398

**CERTIFICATE OF SERVICE**

I hereby certify that on this 11th day of October 2006, a true and correct copy of the foregoing motion was served via email and electronic notification to:

>Maurice V. Piza, Esq.
>5500 Prytania Street
>New Orleans, LA 70115
>maurpi1@yahoo.com
>
>David C. Vidrine, Esq.
>2000 Old Spanish Trail, Suite 103
>Slidell, LA 70458
>DVidrine@mumphreylaw.com

/s/ Jeffrey M. Tapick

JEFFREY M. TAPICK