# EXHIBIT 3

# Deposition of Carlos E. Gaztambide

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

UNITED STATES OF AMERICA          :
                                  :
         Plaintiff                :
                                  :
    v.                            :CIVIL NO. 98-1664(CCC)
                                  :CIVIL NO. 98-2344(CCC)
33,92536 ACRES OF LAND, MORE      :
OR LESS, SITUATED IN VEGA BAJA,   :
COMMONWEALTH OF PUERTO RICO,      :
AND JUAN PIZA BLONDET, AND        :
UNKNOWN OWNERS                    :
                                  :
         Defendants               :
                                  :
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

DEPOSITION OF:

CARLOS E. GAZTAMBIDE

was taken on April 5, 2006 at the offices of CARLOS GAZTAMBIDE & ASSOCIATES, Banco Popular Center, Suite 1515, 208 Muñoz Rivera Avenue, Hato Rey, Puerto Rico, commencing at 9:40 a.m.

BONAFIDE & CERTIFIED REPORTING
P.O. BOX 9022272
SAN JUAN, PUERTO RICO 00902-2272
(787) 250-8507

SHEET 51    PAGE 198

1    Q    So your finding of legal permissibility is based on this information plus your understanding of the
3    historical granting of permits on property that Mr. Piza
4    owns in Vega Baja?
5    A    Primarily.
6    Q    And some of those documents are contained in
7    your work file, is that correct?
8    A    Yes.
9    Q    Did you speak to anybody at the Department of
10    Natural Resources about the permitting process for sand
11    extraction?
12    A    I did not. What I don't know is either Dr.
13    Joyce or Juan checked that.
14    Q    Did you rely on Dr. Joyce to provide you with
15    information that you used in making your legal
16    permissibility determination?
17    A    I don't think so. Again, I say I base it
18    primarily on, on historical data.
19    Q    As of the date of taking, were there any
20    permits for extracting sand on the 33 acres parcel?
21    A    No.
22    Q    Were you aware, are you aware of whether there
23    were any permits that had been applied for sand
24    extraction on the subject property as of the date of

PAGE 199

1    taking?
2    A    I'm not aware.
3    Q    And in your report at no point do you make the
4    conclusion that it's reasonably probable that such
5    permits would be issued, is that correct?
6    A    That's correct.
7    Q    Now, turning to the question of physical
8    possibility, you say that, "The potential for sand
9    extraction has been determined in the accompanying
10    report by Dr. James Joyce."
11    A    Uh-huh.
12    Q    Correct? So you based your physical
13    possibility determination on Dr. Joyce's report?
14    A    Yes.
15    Q    Okay. Did you do any independent
16    investigation or talk to anyone else about how much sand
17    is on the site?
18    A    No. I relied on his report.
19    Q    Did you do any independent investigation or
20    rely on anybody else to determine the quality of the
21    sand on that site?
22    A    No, I relied on his report.
23    Q    So you didn't rely on any past or historical
24    sale of sand on the property, on the property in, in

PAGE 200

1    making your determination about physical possibility?
2    A    Can you restate it. I lost my --
3         MR. P.E. HARRISON:  And I want to enter an
4    objection so, you know --
5         THE DEPONENT:  Go ahead.
6         MR. P.E. HARRISON:  Objection. Asked and
7    answered. You got what he did, he relied upon the
8    report so, okay.
9         MR. TAPICK:  Are you instructing him not
10    answer or --
11        MR. P.E. HARRISON:  No, no, he can answer.
12            EXAMINATION CONTINUED
13    BY MR. TAPICK:
14    Q    And do you need me to repeat the question?
15    A    Yes, please.
16    Q    My first question was about the quality of the
17    sand, I believe and the question is, did you do any
18    independent investigation or rely on anybody else to
19    determine the quality of sand?
20    A    No, no. This why I recommended that Dr. Joyce
21    be retained and I relied on his expertise.
22    Q    So you did not rely on past, past documents or
23    documents of past sand extraction or sale in making your
24    physical possibility determination --

PAGE 201

1    A    No.
2    Q    -- is that correct? Okay. Now, turning to
3    the question of financial feasibility you state that,
4    "The demand for sand in Puerto Rico is fueled by the
5    construction industry." On Page 24. Is that correct?
6    A    That's correct.
7    Q    So you go on to say that, "It is reasonable to
8    anticipate the financial feasibility of such an
9    extraction operation.", correct?
10    A    Yes.
11    Q    Okay. Now, is the silica sand that Dr. Joyce
12    describes as being present on the property used in the
13    construction industry?
14    A    No, it's used in the industries. It's where I
15    mention, "The sand of the character at the subject has
16    strong demand for industrial production."
17    Q    Who is interested in purchasing this sand,
18    purchasing this sand?
19    A    Owens Illinois.
20    Q    For what purpose?
21    A    They, they have, there's a factory out in Vega
22    Baja, very close, relatively close to the subject, that
23    silica sand is a, a primary of raw material for their
24    production of glass.