UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL NO. 98-1664 (FAB) |
| | ) | CIVIL NO. 98-2344 (FAB) |
| vs. | ) | Consolidated Cases |
| | ) | |
| 33.92536 ACRES OF LAND, MORE | ) | |
| OR LESS, SITUATED IN VEGA BAJA, | ) | |
| COMMONWEALTH OF PUERTO RICO, | ) | |
| AND JUAN PIZA-BLONDET, AND | ) | |
| UNKNOWN OWNERS | ) | |
| | ) | |
| Defendants. | ) | |

**UNITED STATES' REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE DEFENDANT'S HIGHEST AND BEST USE EVIDENCE, OR, IN THE ALTERNATIVE, FOR AN EVIDENTIARY HEARING**

Defendant's Response (Docket Entry 145) offers no evidence to demonstrate that the proposed highest and best uses of residential development and sand extraction are reasonably probable. Instead, it merely contains a number of erroneous and conclusory characterizations of facts and testimony that do not constitute sufficient evidence to support the opinions of value offered by Defendant's appraiser, Carlos E. Gaztambide. Because Defendant has failed to produce sufficient evidence showing that the proposed uses of residential development and sand extraction are reasonably probable in the reasonably near future, this Court should exclude all evidence of value premised on these speculative highest and best uses.

**ARGUMENT**

In the nearly eight years since this condemnation action was filed, Defendant has had ample opportunity to come forward with evidence to establish the market value for the 33.92-acre property ("Subject Property"). In order to ensure that the ultimate award of just compensation is fair to both the landowner and the taxpayer, the United States has endeavored

throughout this litigation to provide Defendant with every opportunity to present relevant evidence and testimony that might support his proposed highest and best uses of residential development and sand extraction.[1/] However, the simple truth is that Defendant has not presented sufficient evidence to show that these proposed uses were reasonably probable on the Subject Property. Accordingly, Defendant is not entitled to receive just compensation based on those speculative highest and best uses, and all evidence of value based on those uses should be excluded from the jury's consideration.

**I.    Under Controlling Federal Law, Defendant Must Show That His Proposed Highest and Best Uses are Reasonably Probable in the Reasonably Near Future.**

Defendant's Response cites a number of non-controlling state court decisions in support of his position. However, this federal eminent domain proceeding is governed by federal law, not state law.[2/] See Kirby Forest Indus., Inc. v. United States, 467 U.S. 1, 3-5 (1984) (stating that the substantive legal issues that arise in a federal eminent domain proceeding are governed by federal law, and procedural issues are controlled by Rule 71A); see also Fed. R. Civ. P. 71A.

---

[1/]For example, the United States did not object when Defendant sought to introduce untimely new documents nearly sixty days after this Court ruled that Defendant was prohibited from presenting at trial any evidence of the use of residential development. See Order (Docket Entry 89). In order to ensure that all of Defendant's proffered evidence would be considered in the discovery process, the United States did not oppose Defendant's motion for reconsideration of that Order. Moreover, the United States subsequently agreed to re-open discovery in order to investigate Defendant's newly produced documents, as well as Defendant's new claim that the Subject Property should be valued based on the proposed use of sand extraction. For an account of the procedural history of this case, please refer to the Joint Status Memorandum (Docket Entry 125).

[2/] Defendant fails to cite a single federal court decision in his Response. See Def. Resp. 2-5. However, some of the state court decisions cited by Defendant employ the same standard of review as federal courts. See, e.g., Bd. of Tr.'s of Univ. of Ill. v. Shapiro, 799 N.E.2d 383, 390-91 (Ill. App. Ct. 2003) (upholding trial court's exclusion of proposed highest and best use evidence when defendant failed to show that such use was reasonably probable).

Under controlling federal law, the landowner defendant bears the burden of proof to establish just compensation for the condemned property. Plf. Mem. 8 (Docket Entry 132) (citing <u>Nat'l R. R. Passenger Corp. v. Certain Temp. Easements</u>, 357 F.3d 36, 39 (1st Cir. 2004)). In order for a landowner to seek just compensation based on a proposed highest and best use, he first must show that the use is reasonably probable within the reasonably near future – and hence, not a speculative use. Plf. Mem. 8 (citing <u>Olson v. United States</u>, 292 U.S. 246, 255-57 (1934)). Under Rule 71A, the trial court has the responsibility to screen the evidence of proposed highest and best uses, and exclude from jury consideration those uses that are not shown to be reasonably probable. Plf. Mem. 9 (citing <u>United States v. 320.0 Acres of Land</u>, 605 F.2d 762, 815 (5th Cir. 1979)). If the landowner fails to show that a proposed use is reasonably probable, then the landowner is not entitled to present to the jury any evidence premised on that speculative use. Plf. Mem. 9 (citing <u>320.0 Acres of Land</u>, 605 F.2d at 818).

## II. **Defendant Has Not Shown That Residential Development Was Reasonably Probable on the Subject Property.**

It is undisputed that residential development was prohibited under the applicable zoning and flood zone regulations that govern the Subject Property. Plf. Mem. 3-4. The B-2 zoning regulations expressly prohibit residential development and lot division. Plf. Mem. 3-4, Ex. C (Docket Entry 132-3). In addition, the applicable flood zone regulations prohibit residential development on 15 acres of the Subject Property, and only allow development on the remaining 19 acres if "adequate precautions are taken to fill the land to elevations that protect the property from rising flood waters and/or floods." Plf. Mem. 4. In light of these restrictions, Defendant must show that it was reasonably probable that the Puerto Rico Planning Board ("Planning Board") would grant a variance to allow residential development on the Subject Property. <u>Id.</u> 10.

    A.    **Defendant Has Not Provided Sufficient Evidence That Nearby Residential Development Has Been Approved in a B-2 Zone.**

In his Response, Defendant quotes a passage from Mr. Gaztambide's deposition in which he claims that the Planning Board recently approved four residential development projects on land governed by B-2 zoning regulations. Def. Resp. 2-3. Defendant's Response, however, fails to include the subsequent portions of Mr. Gaztambide's deposition, wherein he admitted that there is no documentary evidence showing that any of these four residential developments actually were located in a B-2 zone. See Plf. Mem. 5, Ex. D 255:21-24, 256:1-6, 259:16-24, 263:11-23, 267:2-9, 269:9-12, 277:11-15 (Docket Entry 133-4). In fact, the documentary evidence – including the permits Mr. Gaztambide relied on in reaching his opinion – reveals that *none* of these four projects was located in a B-2 zone.[3] See Plf. Mem. 5. Mr. Gaztambide concluded that these four projects were located in a B-2 zone based on his interpretation of a zoning map. Id. However, he admitted that he did not consult with anyone at the Planning Board to confirm his interpretation of the underlying zoning. Id. Thus, the only evidence that any of these four residential developments are located in a B-2 zone is Mr. Gaztambide's unsupported opinion, which is flatly contradicted by documents from his own work file. Mr. Gaztambide's unsubstantiated opinion is not sufficient to meet Defendant's burden of proof. See 320.0 Acres of Land, 605 F.2d at 819 n.30 ("as with all opinion evidence, there must be some foundation in fact").

---

[3] Some of the permits indicated on their face that these residential development projects were located on land zoned AD or CR, not B-2. Plf. Mem. 5. When asked about this inconsistency, Mr. Gaztambide concluded that these permits that he himself had relied on and produced as part of his work file were erroneous. Id. Notably, the zoning regulations allow a far broader range of uses in the AD and CR zones than in a B-2 zone. See Plf. Mem. 5 n.3.

  B. <u>Defendant Has Not Provided Sufficient Evidence That the B-2 Zoning Designation On the Subject Property is Improper.</u>

Defendant further claims that Mr. Gaztambide "testified that the Puerto Rican authorities know that the zoning designations are not correct and that variances are routinely granted." Def. Resp. 3-4. Although Defendant has failed to cite any evidence to support this assertion – in violation of Local Rule 7.1(a) – it appears that Defendant is referring to Mr. Gaztambide's deposition testimony, in which he claimed that the B-2 zoning is only appropriate for wetlands. Plf. Mem. 6, Ex. D 80:5-18, 81:22-24, 82:1-4. Notably, this testimony contradicts Mr. Gaztambide's expert report, in which he states that the B-2 zone is designed not only to include wetlands areas, but also to protect "associated systems like mangrove forests and salty ponds." Plf. Mem. 3, Ex. B 28 (Docket Entry 132-2). The undisputed fact that the entire Subject Property is interlaced with wetlands and is located in a low-lying, flood-prone zone stands as *prima facie* evidence that the B-2 zoning designation for the Subject Property is not erroneous, as Defendant claims. Furthermore, Mr. Gaztambide admitted that he did not speak to anyone at the Planning Board to confirm his suspicion that the Subject Property was improperly zoned B-2. <u>Id.</u> 6. Again, Mr. Gaztambide's unsupported opinion does not constitute sufficient evidence of the reasonable probability of residential development. <u>See</u> Plf. Mem. 11-12 (citing <u>United States v. 27.93 Acres of Land</u>, 924 F.2d 506, 513-14 (3rd Cir. 1991)).

  C. <u>Defendant Has Not Provided Sufficient Evidence That a Variance to Allow Residential Development is Readily Obtainable.</u>

Defendant further asserts that "the zoning restrictions which exist in Puerto Rico are subject to generous amendment," suggesting that a variance could be readily obtainable to allow residential development on the Subject Property. Def. Resp. 4. Once again, Defendant has cited

5

no evidence in the record to support this assertion. In fact, the only evidence in the record concerning the process for obtaining a zoning variance demonstrates that the zoning regulations are *not* "subject to generous amendment." This evidence is a seven-year old application for residential development submitted by landowner Juan Piza-Blondet for land that is zoned B-2 and located adjacent to the Subject Property. Plf. Mem. 5-6. In the seven years that this application has been pending before the Planning Board, it has not received approval. Id. This evidence flatly contradicts Defendant's assertion about the ease of obtaining a zoning variance. Accordingly, Defendant has failed to meet his burden of proof regarding the reasonable probability of residential development.

### III. Defendant Has Not Presented Sufficient Evidence That Sand Extraction Was Reasonably Probable on the Subject Property.

It is undisputed that under the applicable land use laws, it is necessary to obtain a permit from the Puerto Rico Department of Natural Resources ("DNR") in order to extract silica sand from the Subject Property. Plf. Mem. 7. Furthermore, DNR regulations prohibit sand extraction on wetlands, and require a buffer zone between wetlands and any extraction areas. Id. 4. It is undisputed that the 33.92-acre Subject Property is interlaced with approximately 15 acres of wetlands. Id. In order to present evidence of value based on the proposed use of sand extraction, Defendant must show that it was reasonably probable that the DNR would grant a sand extraction permit on the non-wetland portion of the Subject Property. Id. 9, 13.

Defendant has provided even less evidence demonstrating the reasonable probability of obtaining a sand extraction permit. In his Response, Defendant claims that "Mr. Piza Blondet's property contains valuable minerals, i.e. sand which was extractable and available for sale immediately prior to the Government's taking of his property." Def. Resp. 5. This suggestion

that Mr. Piza-Blondet extracted silica sand from the Subject Property prior to the taking is contradicted by the testimony of Defendant's own witnesses. Mr. Piza-Blondet testified that he did *not* extract any silica sand from the Subject Property prior to the date of taking. See Piza-Blondet Dep. 11:16-23 (Ex. 1). In addition, Mr. Gaztambide admitted that he had not seen any documentary evidence that Mr. Piza-Blondet had ever been granted a permit to extract sand on the Subject Property. Plf. Mem. Ex. D 198:19-24, 199:1-6.

Although Mr. Piza-Blondet claims to have extracted sand on part of the roughly 400 acres of adjacent land ("Main Tract") that he owns in Vega Baja, this evidence by itself does not demonstrate the reasonable probability of obtaining an extraction permit for the Subject Property. Mr. Piza-Blondet testified that he extracted sand on portions of the Main Tract that lie between the Subject Property and State Road 687. See Piza-Blondet Dep. 11:24, 12:1-3. However, this portion of the Main Tract is governed by different zoning and flood zone regulations than the Subject Property. See Plf. Mem. 3 n.2. Moreover, this portion of the Main Tract is not similarly interlaced with wetlands. See Gaztambide Dep. 154:13-22 (Ex. 2). Accordingly, the mere fact that in the past Mr. Piza-Blondet had extracted sand from these different areas does not constitute sufficient evidence that the DNR would grant a sand extraction permit for the Subject Property that is located in a B-2 zone and is interlaced with wetlands.[4] In fact, Mr. Gaztambide admitted that he has seen no evidence that the DNR has ever

---

[4] In addition, Mr. Piza-Blondet does not testify whether this past sand extraction activity was conducted in accordance with a permit issued by DNR. Documents that were exchanged during discovery and discussed at the deposition of the United States' rebuttal fact witness Julio Toro state that prior to the date of taking, Mr. Piza-Blondet was charged with illegally extracting silica sand on part of his Main Tract and subsequently was fined $25,000.00. See Toro Dep. 18:3-16; Plf. Ex. JT000153-54, JT000192-95, JT000237-38 (Ex. 3).

granted a sand extraction permit for *any* land that is similarly located in a B-2 zone and interlaced with wetlands. Plf. Mem. 7, 14. Accordingly, Defendant has failed to meet his burden of proof regarding the proposed use of sand extraction. See Plf. Mem. 14-15 (citing United States v. 62.50 Acres of Land, 953 F.2d 886, 888-891 (5th Cir. 1992)).

## CONCLUSION

In the nearly eight years since the filing of these consolidated cases, Defendant has had ample opportunity to produce evidence of value for determining just compensation for the taking of the Subject Property. However, the highest and best use evidence that Defendant seeks to introduce at trial is simply too remote and speculative to be considered by the jury in its determination of just compensation. Defendant has failed to meet its evidentiary burden of showing that these proposed uses of residential development and sand extraction were reasonably probable in the reasonably near future. Accordingly, the Court should exclude all evidence of these speculative uses from the jury's consideration at trial.[5]

---

[5] The United States notes that if the Court grants its First Motion in Limine to Exclude All Evidence Relating to Defendant's Appraisal of Sand Deposits (Docket Entry 133), which is currently pending, then Defendant effectively would be barred from presenting any evidence regarding the highest and best use of sand extraction at trial.

Respectfully submitted this 11th day of October 2006.

          ROSA E. RODRIGUEZ-VELEZ
          United States Attorney

          JOSE M. PIZARRO-ZAYAS
          Assistant United States Attorney
          Torre Chardon, Suite 1201
          350 Carlos Chardon Ave.
          San Juan, PR 00918
          Tel: (787) 766-5656
          Fax: (787)766-6219

          s/ Jeffrey M. Tapick
          JEFFREY M. TAPICK
          Attorney, United States Department of Justice
          Environment & Natural Resources Division
          P.O. Box 561, Ben Franklin Station
          Washington, D.C. 20044
          Tel: (202) 305-0297
          Fax: (202) 305-0398

**CERTIFICATE OF SERVICE**

I hereby certify that on this 11th day of October 2006, a true and correct copy of the foregoing motion was served via email and electronic notification to:

> Maurice V. Piza, Esq.
> 5500 Prytania Street
> New Orleans, LA 70115
> maurpi1@yahoo.com
>
> David C. Vidrine, Esq.
> 2000 Old Spanish Trail, Suite 103
> Slidell, LA 70458
> DVidrine@mumphreylaw.com
>
>
> /s/ Jeffrey M. Tapick
> JEFFREY M. TAPICK