## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| 33.92536 ACRES OF LAND, MORE OR | * | CIVIL ACTION NO. 98-1664 (FAB-BJM) |
| LESS, SITUATED IN VEGA BAJA, | * | CIVIL ACTION NO. 98-2344 (FAB-BJM) |
| COMMONWEALTH OF PUERTO RICO, | * | |
| and JUAN PIZA-BLONDET, et al., | * | |
| | * | |
| Defendants. | * | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MOTION, AND INCORPORATED MEMORANDUM, TO CONTINUE TRIAL

NOW INTO COURT, through undersigned counsel, comes the defendant, Juan Piza-Blondet ("Mr. Piza") and files this Motion, and Incorporated Memorandum, to Continue Trial. In support of this Motion, Mr. Piza represents as follows:

I.    **Relevant Procedural Background Concerning the Plaintiff's Motions in Limine**

On or about August 14, 2006, the plaintiff, the United States of America, filed two (2) motions, Docket No. 132 and 133, concerning the defendant's experts, Carlos E. Gaztambide and Dr. James Joyce. In Docket No. 132, the plaintiff sought to exclude Mr. Gaztambide's testimony concerning the highest and best use of the subject tract of land. In Docket No. 133, the government sought to exclude the testimony of all evidence based on the defendant's appraisal of the sand deposits. United States Magistrate Judge Bruce McGivern, following a referral to him from Judge Francisco A. Besosa, ruled on the plaintiff's Motions in Limine, Docket No. 132 and 133, on or about April 24, 2007. See Docket No. 155. The defendant filed a timely objection to Judge McGivern's report and recommendation on or about May 7, 2007. See Docket No. 156. The

defendant's objection and appeal to the district court judge was not ruled on until June 4, 2008. At that time, as this Honorable Court is aware, Judge Francisco A. Besosa found the plaintiff's Motions in Limine, Docket Nos. 132 and 133, "moot."

Thereafter, the plaintiff filed an informative motion on or about June 6, 2008. On June 13, 2008, Judge Besosa rendered a Memorandum and Order granting the plaintiff's Motions in Limine.

While the plaintiff's Motions in Limine were pending, this case remained dormant due to the importance of those Motions and the fact that little could be done while the parties awaited a ruling from the Court. No discovery was necessary; no depositions could be realistically be scheduled; no documents were translated; and in general the parties awaited a ruling from this Honorable Court.

**II.**    **Despite the age of this case, the defendant has not been the sole party responsible for any delay**

As the docket sheet establishes in this matter, five (5) district court judges have been assigned to this case since 1998. As this Honorable Court is aware, Judge Gilberto Gierbolini was the first judge assigned to this matter. On or about April 15, 2004, this case was reassigned to Judge Carmen C. Cerezo. See Docket No. 73. On April 5, 2006, this case was reassigned against to Judge Aida Delgado Colon. Thereafter, this matter was referred to Judge Gustavo A. Gelpi on August 14, 2006 (Docket No. 131) and Judge Francisco A. Besosa on October 6, 2006 (Docket No. 147). The defendant maintains that the constant redocketing of this matter and referral to Magistrate Judges has created significant delay in this matter. There are numerous previous pre-trial orders, pre-trial conferences, and scheduling orders which have been in place and later been vacated due to the reassignment of judges. The defendant respectfully maintains that any delays in getting this ten year old matter to trial are not merely his problem, and yet as set forth below, the defendant is being

-2-

burdened, and denied his due process under the United States Constitution, in setting this trial approximately eight (8) weeks from the last status conference.

### III.    Extenuating Circumstances Causing Delay in this Case

#### A. The translation of Spanish documents

As this case is pending in Puerto Rico, voluminous records, including but not limited to, land records and permitting documents for sand extraction, are in Spanish. Those records have been exchanged between the parties and they exceed several thousand pages in length. The records have been reviewed by experts but have not been translated into English due to the cost of translation.

Prior to the exclusion of portions of the testimony of Carlos Gaztambide and Dr. James Joyce (Docket No. 167), these Spanish documents were not necessary for a defense of this matter. The defendant intended to rely on his experts' testimony in establishing the reasonable probability of the subject tract being developed for residential purposes and for sand extraction. In other words, approximately two (2) years ago and ongoing, the defendant believed that the plaintiff's Motions in Limine (Docket No. 132 and 133) would be denied by this Honorable Court.

Nonetheless, following this Court's recent ruling (Docket No. 167), the Spanish documents have become critical to defending this matter and to preparing any trial on just compensation. Some of these documents are in the process of being translated and the defendant needs additional reasonable time to have the documents translated. Again, these documents could not have been translated earlier, due to the extreme cost of the same. If the Court had denied the plaintiff's Motions in Limine (Docket No. 132 and 133), the Spanish documents would be completely unnecessary for a defense of this matter. In short, the defendant could not make a reasonable decision on whether to translate the Spanish documents until after the Court ruled on the plaintiff's

Motions in Limine. The trial should be continued to allow the defendant additional time to translate the Spanish documents.

## B. Hurricane Katrina/the death of Attorney David Vidrine

On or about August 29, 2005, Hurricane Katrina made landfall and hit the southeast Louisiana coast. At the time of the storm, the Mumphrey Law Firm was located in St. Bernard Parish, Louisiana, and their office was completely destroyed. The Mumphrey Law Firm was inundated with approximately fifteen (15) feet of water due a storm surge, and the roof was ripped off the building. As a result, all documents, all office equipment, and the entire contents of the office were lost, with limited exception.[1] Specifically, in this case, undersigned counsel had to completely recreate the electronic docket sheet of this matter by printing documents out on the Pacer system. Further, the defendant has lost all discovery requests sent to the plaintiff and all responses forwarded to the plaintiff by the defendant. The defendant needs additional time to review the file of the plaintiff to ascertain whether there are any exhibits, contained in discovery responses, that are beneficial to a defense of this matter.

Following Hurricane Katrina, the Mumphrey Firm did not reopen until approximately April of 2006 at another location in Slidell, Louisiana. The Mumphrey Firm did not fully reopen until August of 2006, and the old office building was never rebuilt.

Finally, Attorney David Vidrine, an attorney at the Mumphrey Firm died on or about November 20, 2007. Due to his illness, Attorney Vidrine was frequently in poor health and inattentive to his duties as a lawyer. Accordingly, the Mumphrey Firm enrolled co-counsel, Attorney

---

[1]In this case, one bankers box of documents survived the storm. Many of the documents were in disrepair but not water damaged.

Paul Harrison, in August of 2007. (See Docket Nos. 162 and 163.) Due to Hurricane Katrina, delays caused by that storm, and the death of Attorney David Vidrine, the defendant needs additional time to prepare for trial.

## IV.    Procedures contemplated by Local Rule 16

On or about June 18, 2008, this Honorable Court set an in person status conference to be conducted in Puerto Rico. As this Honorable Court is aware, lead counsel for the plaintiff and the defendant live in the mainland of the United States. Obtaining a commercial airline flight at the last minute would have been exceedingly expensive and difficult. Accordingly, after contacting the Court and filing a Joint Motion to Reschedule Status Conference (Docket No. 168), the parties conducted a status conference by telephone on or about June 19, 2008. In the status conference (as opposed to a scheduling conference contemplated by Rule 16 of the Local Rules of Civil Procedure), the Court shocked undersigned counsel by setting trial in this matter merely eight (8) weeks from the date of the status conference.

During the eight (8) week period of time, counsel for the defendant have family vacations scheduled, and the Court was informed of the same. As this Honorable Court is aware, trial has been set in this case for August 18, 2008. A pre-trial conference has been set for August 14, 2008 and a proposed joint pre-trial order is due to the court on or about August 11, 2008.

As this Honorable Court is well aware, under Local Rule 16, a scheduling conference is normally contemplated to set up all dates concerning discovery, pending motions, or any special procedures for managing a potentially difficult or protracted action. The parties also generally discuss the possibility of settlement.

While the possibility of settlement was discussed in the status conference, the Court was

informed by both parties that it would be difficult to have any significant settlement discussions prior to the trial date of August 18, 2008.

A specific scheduling order was not entered following the reassignment of this case to Judge Besosa. No party in this matter filed a certificate of readiness for a pre-trial conference. Despite the fact that this case was approximately eight (8) years old when assigned to Judge Besosa, the issues have changed throughout this litigation and have again been drastically changed following the Court's most recent ruling on the plaintiff's Motions in Limine.

Local Rule 16 contemplates a pre-trial conference thirty (30) days prior to the scheduled trial date. Further, at least fifteen (15) days prior to the pre-trial conference, counsel for each party "shall" meet in order to prepare the proposed pre-trial order. And finally, Local Rule 16, the pre-trial order shall be filed with the Court seven (7) days prior to the proposed trial date. None of those general provisions have been followed in this matter. In fact, meeting with opposing counsel is impossible as undersigned counsel has been informed that counsel for the government is presently in Puerto Rico, and there is insufficient time to meet fifteen (15) days prior to trial. The parties have not exchanged exhibits. The parties have also not decided on whether exhibits will be exchanged in electronic or paper format.

There has been no specific finding by this Honorable Court that special procedures were to be implemented in this matter. In preparing this matter for trial, the defendants have determined that there are several important motions that as of this date have not been ruled on by this Honorable Court. Specifically, in preparing this matter for trial, the defendants have determined that Mr. Piza's Motion to Determine Proper Appraisal Approach, Docket No. 57, has not been definitively ruled upon by this Court. What is ironic about this, is that history has repeated itself. Docket No. 57 and

the hearing that followed formed the basis for continuing a trial set almost ten (10) years ago.

Additionally, undersigned counsel would ask this Honorable Court to address the following issue - how are the parties going to present a case to the jury and have them decide the proper method of evaluating this property (Docket No. 113) and, at the same time, determine the just compensation for the subject tract of land. Since 1998-99, this has been an issue in this case. The parties have been afforded significant time to provide documents on the proper method of evaluating the subject tract. On or about May 31, 2005, the Court found that there was a jury trial issue on the unity of use for the subject tract of land. See Docket No. 113. However, in that order, the Court in fact recognizes that if the jury finds that there is no unity of use between the subject tract and the main tract, then the before and after method shall not be used. It is noteworthy that under the Court's prior ruling, Docket No. 113, the defendant will be entitled to introduce a value as to the land. Again, if the jury finds that the subject tract and the main tract are in fact separate, segregated pieces of land with different uses, then the plaintiffs cannot introduce any evidence concerning the before and after method of evaluating the subject property.

The reality is that the Court must determine the proper method of evaluating the land prior to trial. See United States v. Reynolds, 397 U.S. 14, 20 (1970). It has not done so. In the alternative, and consistent with the ruling found in Docket No. 113, there needs to be a jury trial on the proper method for evaluating the property with a second trial to follow on the amount to be paid in terms of just compensation. In short, the defendant respectfully maintains that this case is not ready for trial. The parties need to be afforded an opportunity to reframe the primary issues in this case prior to trial being set in this matter. Considering the Court's most recent ruling, the defendant should also be afforded an opportunity to allow its appraiser, Mr. Carlos Gaztambide, time to

-7-

reformulate an opinion consistent with the Court's ruling on the plaintiff's Motions in Limine.

**V.    If this trial is not continued and reset consistent with the Federal Rules of Civil Procedure, then Mr. Piza maintains that he will be denied due process of law**

This Honorable Court should afford Mr. Piza additional time to have his expert appraiser, Carlos Gaztambide, reformulate a value concerning the subject property without consideration given to the residential use of that property or the value of the sand contained on the subject tract. Mr. Gaztambide needs additional time to prepare a proper appraisal of the property in using a sale of comparable approach, but not implementing the before and after method. At the present time, there is a clear jury trial issue on whether the condemned piece of property and the main tract are separate parcels. Accordingly, Mr. Gaztambide should be allowed an opportunity to formulate a value of the land, the thirty-four (34) acres condemned by the plaintiff, separate and apart from the main tract of land in the area owned by Mr. Piza. Federal case law is quite clear that in evaluating property in a condemnation proceeding, expert testimony is critical to the fair trial process. Without an expert to testify as to the property value, Mr. Piza maintains that he cannot have a fair trial on just compensation. Further, it is anticipated that the plaintiff will seek to exclude the testimony of the defendant, himself. As this Honorable Court is aware, there cannot be a just compensation trial if the landowner is not allowed to testify in his case concerning the value of the property. In fact, the landowner is entitled to be "heard." Bragg v. Weaver, 251 U.S. 57, 58, 40 S.Ct. 62, 63 (1919).

Once Mr. Gaztambide prepares a supplemental report consistent with this Court's rulings, then the plaintiff will need additional time to prepare their case, if any, against Mr. Gaztambide. The plaintiffs may also need additional time to prepare their case against witnesses who have been identified in the discovery process, but until recently, were minor players in this matter. The plaintiff

intends to use several witnesses from the Department of Natural Resources to testify concerning the zoning procedures and variances that were routinely granted in 1998.

## VI.    The defendant requests oral argument on this Motion

The defendant maintains that this Motion is of critical importance in this matter. The defendant requests an opportunity to present his case by oral argument to this Honorable Court.

## CONCLUSION

For the foregoing reasons, Mr. Piza maintains that this trial should be continued. Despite the age of this case and the delay in ruling on the plaintiff's Motions in Limine (Docket Nos. 132 and 133), Mr. Piza should not be forced to try this case in a mere eight (8) weeks from the date of the last status conference. To do so is to deny him his entitlement to a fair trial on just compensation. Due process rights are implicated as the Court's most ruling has significantly undermined the defendant's ability to put on a trial as to the value of the land. Mr. Piza specifically requests a new scheduling order, as contemplated by Local Rule 16, allowing him additional time to have documents translated, and to have his expert appraiser, Carlos Gaztambide, render an opinion that is consistent with this Honorable Court's prior rulings.

Respectfully submitted,

_____/s/ Francisco Diez_____.
Francisco Diez
Bar Roll No. 215412
Attorney for JUAN PIZA BLONDET
B-5 Pabonuco Street
Suite 216 PMB 255
Guaynabo, Puerto Rico 00968
Telephone: (787) 721-1100
Telecopier: (787) 725-8195

J. Wayne Mumphrey
Maurice Piza
Mumphrey Law Firm, L.L.C.
2000 Old Spanish Trail, Suite 103
Slidell, LA 70458
Telephone: (985) 649-0709
Telecopier: (985) 649-5706

- and -

Paul E. Harrison
Law Offices of Paul E. Harrison, LLC
532 Girod Street
Mandeville, LA 70448
Telephone: (985) 727-7348
Telecopier: (985) 624-8145

Copies to:

JOSE M. PIZARRO ZAYAS
Assistant U.S. Attorney
Room 452 Federal Building
Hato Rey, Puerto Rico 00918
Tel. 766-5656

JEFFREY M. TAPICK
Attorneys, U.S. Department of Justice
Environment and Natural Resources Division
P. O. Box 561 – Ben Franklin Station
Washington, D.C. 20044
Telephone: 202-305-0299
Fax:        202-305-0398

**Certificate of Service**

I HEREBY CERTIFY that I have on this ____ day of July, 2008, served all counsel with a copy of the above and foregoing by email and electronic notification.

_____/s/ Francisco Diez_____.
Francisco Diez