IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

********************************

UNITED STATES OF AMERICA :
:
Plaintiff :
:
v. :CIVIL NO. 98-1664(CCC)
:CIVIL NO. 98-2344(CCC)

33,92536 ACRES OF LAND, MORE :
OR LESS, SITUATED IN VEGA BAJA, :
COMMONWEALTH OF PUERTO RICO, :
AND JUAN PIZA BLONDET, AND :
UNKNOWN OWNERS :
:
Defendants :
:

********************************

DEPOSITION OF:

RAUL RODRIGUEZ LUGO

was taken on April 4, 2006 at the offices of the UNITED STATES ATTORNEY FOR THE DISTRICT OF PUERTO RICO, Torre Chardon, Chardon Avenue, Hato Rey, Puerto Rico, commencing at 9:37 a.m.

**BONAFIDE REPORTING SERVICE**
**PO BOX 11850**
**SUITE 236, SAN JUAN, PR 00922-1850**
**(787)250-8507**

EXHIBIT
"A"

A Yes.

Q You're a member of the Appraisal Institute?

A I'm not a member of the Appraisal Institute.

Q Okay. What is your professional qualifications to be an appraiser?

A I am state licensed and I am state certified. I started appraising in 1989 with Mr. Pedro Pons who's an AMI appraiser and I, in the early 90's I went to New York University and I obtained a Master's of Science in real estate investment analysis.

I worked afterwards for a developer in London for a couple of years. Came back to Puerto Rico and I've done appraisals on, how do you say, freelancing for Gonzalo Ferrer and for Javier Ortiz Del Valle with ODV Appraisal and I'm currently with Javier Porrata.

Q Have you worked previously in an eminent domain case?

A Yes, I did.

Q Okay. Can you tell me about that work.

A It was an expropriation of a site in Toa Baja, I believe. It's a, to the best of my recollection, it was about, it was roughly three acres, I believe it was and Autoridad de Edificios Publicos which is a local agency, was expropriating part of a larger track to, to

build a public school.

Q And in that case, did you represent the land owner or the governmental entity?

A I represented the government.

Q Have you ever represented the land owner?

A No.

Q In that case that you worked on previously, did that case ever go to trial?

A I believe they settled before going to trial.

Q And that case --

a I, my involvement in that case was basically preparing the, the appraisal report and doing the research and Mr. Pons is the person that, that went to court and did all.

Q Okay. Was the actual appraisal under your signature or was it under Mr. Pons' signature?

A Both.

Q Both?

A Uh-huh.

Q In that case when the government settled, did they pay, more or less, than your original appraised value?

A I don't remember.

Q Okay. Do you have a recollection of where

that case was pending?

A What do you mean?

Q What court was the case pending in front of.

A I wouldn't know that.

Q Okay. Was Mr. Pons that went actually and did he do some court work, did I understand you correctly a minute ago?

A I believe he did. I know, what I can remember is that, that they had meetings, the parties and they eventually settled.

I don't remember if they actually got to trial or it was done before trial.

Q Okay. Do you remember the name of the land owner?

A No.

Q Is that your only previous involvement in an expropriation matter?

A Yes.

Q Do you have any records concerning this previous case that you worked on?

A On this, the one that we're talking about right now?

Q Yes.

A I don't have anything. That was when I was

now.

Q As you mentioned a moment ago, you're not a geologist, correct?

A I'm not a geologist.

Q And you don't have any expertise per se with regard to silica sand, is that correct?

A That's correct.

Q And you're not an engineer?

A I'm not an engineer.

Q Okay. And so at some point you get called into this case to work on it, is that correct?

A Uh-huh. Yes.

Q And who eventually told you that the piece of land you would be appraising was 385.25 acres?

A That's information that I gathered from, from all the documents that were given to me.

Q And did you bring with you today all the documents that you were given?

A I think, I believe that's it.

Q Okay. Do you have and I'll present these to you as Exhibits 1 and 2 to the deposition, in your set of papers, do you have these two documents?

A I'm sorry. What's the question.

Q The question was, before rendering your

opinions in this case, were you provided copies of those documents?

A I don't remember specifically and this looks like title studies, I don't remember specifically having them.

(Whereupon the above-mentioned document were marked as Exhibit No. 1 and 2 for identification.)

EXAMINATION CONTINUED

BY MR. P.E. HARRISON:

Q Okay. In general terms, can you tell me what those documents establish?

A It's basically a legal history of the property.

Q Okay, and --

A Of the Piza property

Q And has the 385 acres been subdivided?

MR. TAPICK: Objection to the extent it calls for a legal conclusion.

THE DEPONENT: From what I can see here, there's been some segregations.

documents don't appear to have been translated into English and if we're going to be introducing them as exhibits that we should probably work out an arrangement to have Spanish documents translated for the benefit of the Court.

MR. P.E. HARRISON: I don't have a problem with it being translated for the Court but the witness just went through that particular document and identified exactly where the 33 acres were subdivided out.

EXAMINATION CONTINUED

BY MR. P.E. HARRISON:

Q   So let me ask you, Mr. Rodriguez, do you have any problems interpreting that document?

A   Can you rephrase that question.

Q   I mean, you don't need a translator to go through those documents, do you?

A   No, I don't need a translator for that.

Q   So the Court might benefit from your reading of the Spanish a moment ago into English and so counsel suggested that we get a translator to do that, we can certainly do that, but can you tell me in English what you just said a moment ago in Spanish.

A   Can you repeat that.

Q   A moment ago you read into the record a

Spanish statement stating that 34 acres, approximately, was subdivided out. Can you translate that for me in English.

A    "Segregated a parcel of 34.038 'cuerdas', equal to 133,782.87 square meters to Page 141 of Book 380 of Vega Baja, property number 27674, describing the following remnant:"

Q    Okay. Thank you, thank you very much. I'd like to look at exhibit and what is the date on that document?

A    The document of the title study?

Q    Yes.

A    The date of the study is March 1st, 2005.

Q    Okay. And what is the date of the transaction when the property was subdivided? If it's not indicated on Exhibit 1, please refer to, if it's not indicated on Exhibit 2, please refer to Exhibit 1.

A    I'm sorry. You want to, what date? What was that?

Q    When the 34 acres were subdivided, what was the date of that transaction, first, and when was it recorded?

A    I believe it's November 26th, 1997.

Q    So that transaction that we just went through

was, obviously, before the expropriation in this case, correct?

A It was before December '98, yes.

Q Okay. If the subject property, the one that was expropriated, ends up being 33 acres, what applicability would your appraisal be to that property?

A Can you rephrase that.

Q If the subject property turns out to be 33 acres, what is the applicability of your appraisal?

A I don't understand your, your question.

Q How many acres did you appraise in this case?

A I did an appraisal of the larger parcel and the, and the remnant parcel, basically.

Q Okay. That being the approximately 385 acres, correct?

A Approximately.

Q Okay. And the method that you used in your appraisal was for a large tract of land, correct?

A Uh-huh.

Q All right. The method that you -- Is that correct?

A Yes.

Q Okay, thank you. That's another rule to a deposition, if I didn't say so earlier, you've got to

EXAMINATION CONTINUED

BY MR. P.E. HARRISON:

Q With all that you probably forgot the question. I've got to ask it again, right?

A I remember this one.

Q You remember it, alright.

A I remember this one, yes.

Q It wasn't a complicated question, was it?

A From, from, from a valuation standpoint, if I'm valuing a 34 acre site --

Q Yes.

A -- that's being expropriated in whole --

Q Yes.

A -- well, there's no, no reason to do the before and after.

Q You can't, it's just, you know, we're all sitting here and counsel was making objections but you know exactly what I'm asking you, Mr. Rodriguez. If the government expropriates en entirety of a 33 acre tract, you can't use the before and after method, is that correct?

A That's correct.

Q That's correct. It doesn't call for any type of information that would require you to really do a

whole lot of legal analysis of it because we're dealing with a land issue and the mere fact that there's no remnant tract, isn't that fair? Isn't that correct?

MR. TAPICK: Objection.

THE DEPONENT: You confused me with that --

EXAMINATION CONTINUED

BY MR. P.E. HARRISON:

Q Okay. You don't have to analyze the question, you don't have to legally conclude anything, you can factually determine yourself, as an appraiser, that if you have a 33 acre tract of land and you don't have a remnant portion of it, you cannot use the before and after method, isn't that correct?

A That's correct.

Q Thank you.

MR. P.E. HARRISON: If you'd like to take a break, we can certainly do that.

(A recess was taken at this time.)

EXAMINATION CONTINUED

BY MR. P.E. HARRISON:

Q We took a quick break. You had a chance, you feel better, you're ready to continue with the deposition?

A Yes.

REPORTER'S CERTIFICATE

I, ELBA MARTINEZ, Court Reporter DO HEREBY CERTIFY, That the foregoing transcript is a full, true and correct record of the testimony that was electronically recorded by me and thereafter reduced to typewritten form.

I FURTHER CERTIFY, that I am in no way interested in the outcome of the case mentioned in said caption.