UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL NO. 98-1664-FAB-BJM |
| | ) | CIVIL NO. 98-2344-FAB-BJM |
| vs. | ) | Consolidated Cases |
| | ) | |
| 33.92536 ACRES OF LAND, MORE | ) | |
| OR LESS, SITUATED IN VEGA BAJA, | ) | |
| COMMONWEALTH OF PUERTO RICO, | ) | |
| AND JUAN PIZA BLONDET, AND | ) | |
| UNKNOWN OWNERS | ) | |
| | ) | |
| Defendants. | ) | |

**UNITED STATES' RESPONSE TO DEFENDANT'S MOTION TO SHOW CAUSE REGARDING NEW AND PREVIOUSLY UNDISCLOSED OPINION TESTIMONY OF CARLOS E. GAZTAMIBDE AND JUAN PIZA-BLONDET**

The United States of America (the "United States") respectfully files this Response to the Defendant's Motion to Show Cause (Docket No. 177). The Defendant's motion, which seeks to introduce at trial new and previously undisclosed opinion testimony from appraiser Carlos E. Gaztambide and landowner Juan Piza-Blondet, fails to set forth any grounds to justify this untimely new opinion testimony. With respect to Mr. Gaztambide, the Defendant has failed to disclose any details about his new opinion of value or the highest and best use upon which this new opinion is based. With respect to Mr. Piza-Blondet, the Defendant has misrepresented the law and the underlying facts in a thinly veiled effort to introduce a new opinion of value that directly contradicts the Defendant's prior stipulation, and which is based on the inadmissible highest and best uses of sand extraction and residential development. Accordingly, and for the reasons set forth below, the United States requests that the Court bar Mr. Gaztambide and Mr. Piza-Blondet from offering any opinion testimony other than Mr. Gaztambide's previously disclosed opinion of $9,000 per cuerda based on conservation and/or mitigation.

**FACTS**

A. **This Court Ordered the Defendant to Show Cause Why He Should Be Permitted to Introduce New Opinion Testimony from Mr. Piza-Blondet and Mr. Gaztambide, and to Provide a Detailed Description of This New Opinion Testimony.**

1. On July 21, 2008 – less than 30 days before the August 18, 2008 trial – the Defendant advised the United States for the first time that he intended to call both Mr. Piza-Blondet and Mr. Gaztambide to offer opinions of value that had not previously been disclosed. See Docket No. 170 ¶ 15.

2. The Defendant advised the United States that Mr. Piza-Blondet's new opinion testimony would be "based on his business experience," and that Mr. Gaztambide's new opinion testimony would be "based on comparable sales." Id. ¶¶ 16, 18.

3. However, the Defendant did not disclose what this new opinion testimony would be, or what highest and best use these new opinions would be based upon. Id.

4. On July 28, 2008, this Court entered an Order that "Defendant shall show cause, on or before 8/01/08, why the Court should allow opinion testimony by Mr. Piza-Blondet "as to the values [of the land] based on his business experience," and opinion testimony by Mr. Gaztambide "as to the value of land based on comparable sales." See Docket No. 171.

5. The Court further ordered that the Defendant include a "detailed" account of this new opinion testimony from Mr. Piza-Blondet and Mr. Gaztambide in his filing. Id.

6. On August 1, 2008, the Defendant filed a two-page Motion and Memorandum to Show Cause (Docket No. 177), along with two signed affidavits from Mr. Piza-Blondet.

B. **The Defendant Has Failed to Disclose Any Information About the New Valuation Testimony He Seeks to Offer from Mr. Gaztambide at Trial.**

7. In his motion, the Defendant confirmed that "Mr. Piza intends to call expert appraiser, Carlos Gaztambide, to testify as to the value of the land." See Docket No. 177 at 2.

8. However, the Defendant's motion fails to state what Mr. Gaztambide's opinion of value will be, or what highest and best use it will be based upon. See id.

9. As explained in the United States' Motion to Expedite the August 14, 2008 Pretrial Conference (Docket No. 170), in Mr. Gaztambide's Rule 26 expert report, he presented evidence and opinions of value based on the highest and best uses of: (1) sand extraction; (2) residential development; and (3) conservation and/or mitigation. See Docket No. 132-3 at 12-13; Docket No. 132-6 at 5-7.

10. In light of the Court's June 13, 2008 Order (Docket No. 167) excluding all evidence based on sand extraction and residential development, the only admissible valuation testimony remaining from Mr. Gaztambide's expert report is his opinion of value of $9,000/cuerda based on conservation and/or mitigation.

C. **The United States Actively Sought Discovery Regarding Mr. Piza-Blondet's Opinions of Value, to Which the Defendant Ultimately Responded by Stipulation.**

11. In his Motion to Show Cause, the Defendant claims the United States "has been afforded ample opportunity to obtain Mr. Piza's opinions," but "purposely chose not to depose Mr. Piza concerning his opinions." See Docket No. 177 at 2.

12. However, throughout the discovery process, the United States actively and repeatedly sought discovery – through written requests and at deposition – concerning Mr. Piza-Blondet's opinions of value and the complete basis for those opinions.

13. In Interrogatory No. 8 of its First Set of Interrogatories, served on or about January 6, 2006, the United States inquired about the opinions of value Mr. Piza-Blondet would offer at trial:

> Please provide a complete statement of all expert and lay opinions that you intend to use at trial . . . *This request also includes a complete statement of the methodology, facts, assumptions, and calculations used by landowner Juan*

3

> *Piza-Blondet in reaching his opinion of the amount of just compensation owed for the taking of the Subject Property.*

See U.S. First Set of Interrog. No. 8 (Ex. 1) (emphasis added).

14. In his Response to Interrogatory No. 8, the Defendant represented that Mr. Piza-Blondet's opinions of value were based on the opinions of Mr. Gaztambide and Dr. Joyce, stating, in pertinent part:

> Mr. Piza-Blondet relied upon the expert opinions of Mr. Carlos Gaztambide and Dr. Joyce to reach an opinion of just compensation owed him for the taking of his property. The value of the property and method of calculation of same is fully set forth in the expert reports rendered by Mr. Gaztambide and Dr. Joyce.

See Def.'s Resp. to U.S. First Set of Interrog. No. 8 (Ex. 2).

15. Subsequently, at the April 6, 2006 deposition of Mr. Piza-Blondet, counsel for the United States directly asked Mr. Piza-Blondet about his opinions of value and the basis for those opinions no fewer than six (6) times:

> Q: Have you formed an opinion of value for the 34 acres of land that were acquired by the FAA in this case?
>
> A: Yes. I just talked to [Defendant's counsel] and said that if you people aren't going to use that in maybe 20 years or 30 years I'd like to get it back for some, I don't know, because I think it's very valuable land.
>
> Q: My question is more directly focused on, do you have a dollar amount in mind for what you think the land is, what you, for the amount that you think you are owed for the taking of the 34 acres.
>
> A: Yes, I think it's more than Gaztambide said it was worth, yes.
>
> \* \* \* \*
>
> Q: Do you have a separate opinion of value for the sand deposits that are contained in the 34 acres of land?
>
> A: A separate, a what? I didn't understand that.

> Q: Do you have an opinion of value for how much the sand on the 34 acres of property is worth?
>
> A: It's high sand. The only thing you have to do is scrape it up with a loader, with a, we call "tres cabitos." It's a - -
>
> * * * *
>
> Q: Do you intend to offer an opinion of value for the value of the sand deposits at trial?
>
> Mr. P.E. HARRISON: Let me just enter an objection. If you ask him, maybe so. You may go ahead.
>
> A: Well, I think I answered. Anything else that - -
>
> Q: Do you intend to offer an opinion of value at trial? Is it your intention presently?
>
> A: Well, I believe it's worth more, sure.
>
> Q: Do you intend to perform a calculation prior to trial to determine more exactly what your opinion of value for that sand deposit would be?
>
> A: Yes. Let me tell you, if there hadn't been a mission [sic] on your property, we would have taken that sand out years ago.

See Piza-Blondet Depo. at 13:23-24; 14:1-11; 17:16-24; 19:14-24; 20:1-7. (Ex. 3).

16. At the conclusion of Mr. Piza-Blondet's April 6, 2006 deposition, the United States requested, and the Defendant agreed to provide, "a complete computation of any opinion of value to the extent that it differs from the opinion that will be offered by Mr. Gaztambide." See id. at 23:24; 24:1-12.

17. By letter dated April 19, 2006, the United States repeated its request for a written computation concerning the opinions of value Mr. Piza-Blondet would offer at trial if those opinions differed from those of Mr. Gaztambide:

> To the extent that Mr. Juan Piza-Blondet intends to offer an opinion of value that differs from Mr. Gaztambide's opinion of value, we request that you

provide us with a written "computation" of the amount of just compensation demanded by Mr. Piza-Blondet, and the complete basis and reasons therefor."

See April 19, 2006 letter to David C. Vidrine (Ex. 4).

18. After the Defendant failed to comply with this request by the May 1, 2006 close of discovery, by letter dated May 26, 2006, the United States again repeated its discovery request concerning Mr. Piza-Blondet's opinions of value:

> As you are aware, the United States is still awaiting Defendant's responses to outstanding discovery requests made at depositions during the week of April 3, 2006 . . . One of these requests concerns the opinion of value that Mr. Juan Piza-Blondet intends to offer at trial. We requested that you provide either (1) an admission that Mr. Piza-Blondet's opinion of value is based entirely on the opinion that will be offered by appraiser Carlos Gaztambide; or (2) a written "computation" of the amount of just compensation demanded by Mr. Piza-Blondet, and the complete basis and reasons therefor.

See May 26, 2006 Letter to David C. Vidrine (Ex. 5).

19. Finally, on June 30, 2006, the Defendant responded to the United States' multiple discovery requests regarding Mr. Piza-Blondet's opinion of value by stipulating that "Mr. Piza will not offer an opinion of value which differs from that of his expert witnesses." See Docket No. 170-3.

**D. The New Testimony the Defendant Seeks to Offer from Mr. Piza-Blondet Is Based on the Excluded Uses of Residential Development and Sand Extraction.**

20. In an affidavit attached to the Defendant's Motion, Mr. Piza-Blondet discloses for the first time that his opinion of value for the subject property is $143,000 per acre, or $4,862,000 for the roughly 34 acres taken in this case. See Docket No. 177-3 ¶¶ 3-4.

21. Mr. Piza-Blondet states in his affidavit that his opinion of value is derived from the sales of "lots right next to the expropriated land," which he states were sold for residential development. See id. ¶¶ 5-10.

6

22. Mr. Piza-Blondet's new opinion of value of $143,000 per acre based on residential development is roughly three times as much as Mr. Gaztambide's excluded opinion of value of $50,000 per cuerda based on residential use. See Docket No. 170 ¶ 3.

23. In his affidavit, Mr. Piza-Blondet further bolsters his opinion of value by alluding to the value of silica sand deposits, which he claims to have extracted for $18 per meter from the same property that was later sold for residential development. See id. ¶¶ 14-16.

24. The Defendant's motion states that "Mr. Piza-Blondet has extensive knowledge concerning the sale of property surrounding the subject tract land, the development of land on the island of Puerto Rico, and the procedures for obtaining the requisite permits or variances for properties zoned B2 and CR." See Docket No. 177 at 1.

25. All of the nearby properties discussed by Mr. Piza-Blondet in his affidavits were sold for residential development. See 177-2 at ¶¶ 12-13, 17; 177-3 at ¶¶ 6, 11-12.

26. All of the "development" experience described in Mr. Piza-Blondet's affidavit involved land developed for residential or commercial use. See 177-2 at ¶¶ 4-14.

**E.  The Defendant Has Provided No Supporting Evidence That Variances or Permits Were Granted to Allow Residential Development or Sand Extraction in a B-2 Zone.**

27. Mr. Piza-Blondet claims that he has obtained variances to allow residential development on adjacent property zoned B-2, stating "We have gotten R-1 and R-3 in land started as B-2 by variance." Docket No. 177-2 ¶ 13; see also id. ¶ 17.

28. Mr. Piza-Blondet further claims that the "lots right next to the expropriated land" were "originally zoned B-2," and that "due to a variance which is a widely used tool/method in Puerto Rico, the zoning was changed from B-2 to R-1." Docket No. 177-3 ¶¶ 6, 11-12.

29. In addition, Mr. Piza-Blondet states that prior to the sale of those lots, "I extracted silica sand through an extraction permit." Id. ¶ 15.

7

30. However, Mr. Piza-Blondet did not attach any documentation[1] to support his claims that variances or permits were ever granted for residential development and sand extraction in a B-2 zone, or that the properties in question were, in fact, zoned B-2.

31. Notably, in his report and at his deposition, Mr. Gaztambide made the very same unsubstantiated claims that these same nearby residential developments – including the lots sold by Mr. Piza-Blondet – were located in a B-2 zone.  See Docket No. 132-3 (Gaztambide Residential Appraisal Report Excerpts) at 36, 48-50; Docket No. 132-5 (Gaztambide Depo. Excerpts) at 250-51; 255-56; 259; 263; 267; 269.

32. However, as Magistrate Judge McGiverin noted in his Report and Recommendation (Docket No. 155), the documentary evidence contradicted Mr. Gaztambide's claims by showing that these nearby residential developments were *not* zoned B-2, but actually were zoned C-R or AD – which are less restrictive zones than the B-2 zone.  See Docket No. 155 at 9-10 and note 2; see also Docket No. 132-4 (Zoning Regulations).

33. Documents produced by the Defendant himself, as well as documents produced to the Defendant from the work file of the United States' appraiser, clearly state on their face that the nearby 900 meter lots sold by Mr. Piza-Blondet were zoned AD, not B-2.[2]  See Documents Concerning Adjacent 900 Meter Lots (Ex. 7).

34. Furthermore, the only documents that Defendant produced during discovery concerning residential development in a B-2 zone were documents relating to an application for a

---

[1] In its Second Request for Production, served on or about January 6, 2006, the United States requested production of "all permits, written approvals, correspondence, memoranda, or other Documents issued by any government agency or department" relating to residential development and sand extraction.  See U.S. Second Req. for Prod. Nos. 4, 5 (Ex. 6).

[2] The United States is in the process of having these Spanish-language documents translated, and will provide translated copies to the Court upon request as soon as they are available.

zoning variance to develop an apartment complex on property immediately adjacent to the 34-acre subject property.  See Docket No. 132 at 4-6.

35. This application for a variance to allow residential development in a B-2 zone immediately adjacent to the subject property has not been approved in the ten years since it was first submitted by Mr. Piza-Blondet.  See id.

**ARGUMENT**

Simply stated, the Defendant has failed to set forth any valid reason for the Court to allow either Mr. Gaztambide or Mr. Piza-Blondet to offer new, previously undisclosed opinions of value at trial.  When a party seeks to introduce evidence that it failed to properly disclose during discovery without substantial justification, the appropriate remedy is to exclude such previously undisclosed evidence from trial.  See Fed. R. Civ. P. 37(c); Solis-Alarcon v. United States, 514 F. Supp. 2d 185, 191-92 (D.P.R. 2007) (excluding evidence that was not properly disclosed during discovery).  The new opinion testimony the Defendant seeks to introduce was required to be disclosed under Rules 26(a) and (e) as "evidence to support [his] claims or defenses," and the Defendant has failed to show cause for his failure to disclose this opinion testimony.  See Fed. R. Civ. P. 26(a), (e).  Accordingly, and for the reasons set forth below, the United States requests that the Court exclude Mr. Gaztambide and Mr. Piza-Blondet from offering any opinions other than Mr. Gaztambide's previously disclosed opinion of $9,000 per cuerda based on conservation and/or mitigation.

**A.   The Defendant Has Failed to Show Any Cause for the Court to Allow the New and Still Undisclosed Opinion Testimony from Mr. Gaztambide.**

In his Motion to Show Cause, the Defendant has not even attempted to argue why Mr. Gaztambide should be permitted to testify to anything other than the $9,000/cuerda opinion of value based on conservation and/or mitigation, which is his only previously disclosed opinion

9

that remains admissible in light of this Court's June 13, 2008 Order.  Moreover, because the Defendant refused to include *any* description – much less a "detailed" one – of Mr. Gaztambide's new opinion, the United States remains wholly unable to address this untimely new testimony at trial.  Although the Defendant states that "due to the deadlines ordered by this Honorable Court, the Defendant has not had time to prepare an updated report," the Defendant utterly fails to justify *why* Mr. Gaztambide should be allowed to prepare a supplemental expert report now, two years after the close of discovery and less than 14 days prior to trial.  Because the Defendant has failed to show cause or disclose the details of this new opinion testimony, the Court should bar the Defendant from introducing any valuation testimony from Mr. Gaztambide other than his previously disclosed $9,000/cuerda opinion of value based on conservation and/or mitigation.

**B.    The Defendant Has Failed to Show Cause Why Mr. Piza-Blondet Should Be Permitted to Offer New Opinion Testimony that Contradicts the Defendant's Prior Stipulation and that is Based on Sand Extraction and Residential Development.**

With respect to his arguments attempting to justify why Mr. Piza-Blondet should be allowed to introduce a new opinion of value, the Defendant has misrepresented both the law and the underlying facts in a thinly veiled attempt to introduce opinion testimony that directly contradicts the Defendant's prior stipulation, and which is based on the inadmissible highest and best uses of sand extraction and residential development.

**1.    Mr. Piza-Blondet Has Not Been Deprived of Due Process Because He Has Participated Fully in Discovery and May Still Offer an Opinion of Value Based on Conservation and/or Mitigation.**

Although the Defendant alleges that Mr. Piza-Blondet's due process rights would be violated if he were not permitted to testify to a new opinion of value, see Docket No. 177 at 2, this argument fails for at least two reasons.  First, it blatantly ignores that Mr. Piza-Blondet was offered multiple opportunities during this ten-year litigation to disclose the opinion testimony he

intended to offer at trial and the basis thereof.  See Docket No. 170 at 6-7.  Contrary to the Defendant's false assertions, see Docket No. 177 at 2, the United States repeatedly and directly sought discovery through written requests and at deposition regarding Mr. Piza-Blondet's opinion of value.  However, the Defendant failed to disclose any opinion of value from Mr. Piza-Blondet before the close of discovery, and instead elected to stipulate that Mr. Piza-Blondet's opinion testimony would not differ from that of his experts, Mr. Gaztambide and Dr. Joyce.  By retaining expert witnesses and participating in the discovery process, Mr. Piza-Blondet has been afforded a full and fair opportunity to be heard in this case.

More fundamentally, the Defendant's due process argument fails because Mr. Piza-Blondet still has the opportunity to offer an opinion of value at trial – provided that it does not differ from Mr. Gaztambide's opinion of $9,000 per cuerda based on conservation and/or mitigation.  Because the Defendant previously stipulated that Mr. Piza-Blondet's opinion of value would not differ from those of his expert witnesses, and because this Court has ruled that the opinions from those experts regarding sand extraction and residential development are improper and inadmissible, Mr. Piza-Blondet is now similarly precluded from offering any opinion of value based on sand extraction or residential development.  Accordingly, the only valuation testimony that Mr. Piza-Blondet may offer at trial is testimony that does not differ from Mr. Gaztambide's $9,000/cuerda opinion of value based on conservation and/or mitigation.[3]

---

[3] As the United States notes in its Motion to Expedite (Docket No. 170), in his report, Mr. Gaztambide applied the $9,000 opinion of value only to the wetlands portion of the subject property which he found to have a highest and best use of conservation/mitigation.  However, in view of the Court's ruling barring Mr. Gaztambide's opinion of a highest and best use for residential development and sand extraction for the upland portion of the subject property, the United States would not object to Mr. Gaztambide's applying the $9,000/cuerda value to both the wetlands and the uplands on the 34-cuerda subject property, for an overall opinion of value of roughly $314,000.  This amount is substantially higher than the roughly $200,000 opinion of value the United States' appraiser will offer at trial.  See Docket No. 170 at 3-4.

Although this opinion of value is significantly lower than the opinion testimony Mr. Piza-Blondet now seeks to introduce at trial, that does not justify allowing Mr. Piza-Blondet to introduce this untimely new opinion.

While Federal Rule of Civil Procedure 71.1 entitles a landowner to participate in the trial of the issue of just compensation, see Fed. R. Civ. P. 71.1(e)(3), this provision does not entitle the landowner to thwart the Federal Rules of Civil Procedure governing the timely and orderly disclosure of evidence to support the landowner's claims of just compensation.  See Fed. R. Civ. P. 37(c); see also Solis-Alarcon, 514 F. Supp. 2d at 191-92.  Furthermore, the limited legal authority cited by the Defendant does not stand for the proposition that due process entitles a landowner to offer previously undisclosed opinion testimony at trial.  Rather, the first two cases cited by the Defendant are inapposite because they addressed the due process rights of landowners who had not been served with proper notice of the condemnation proceedings.  See Schroeder v. City of New York, 371 U.S. 208, 212 (1962); Walker v. City of Hutchinson, 352 U.S. 112, 115-16 (1956).[4]  Here, unlike the landowners in the cases cited by the Defendant, Mr. Piza-Blondet was served with proper notice and has been afforded ample opportunity to participate in this case. For these reasons, the Defendant's due process argument does not constitute cause for permitting Mr. Piza-Blondet to offer new opinion testimony at trial.

### 2. Mr. Piza-Blondet's New Opinion Testimony is Based on the Inadmissible Highest and Best Uses of Sand Extraction and Residential Development.

Mr. Piza-Blondet's new opinion of value of $143,000 per acre is impermissibly based on the same highest and best uses of residential development and sand extraction that this Court has

---

[4] The third case cited by the Defendant is equally inapposite, as it involved a Virginia statute that permitted the taking of property without requiring a hearing on just compensation, but which provided a right of appeal.  See Bragg v. Weaver, 251 U.S. 57, 58 (1919).  Notably, the Court found that the Virginia statute did not violate the landowner's due process rights.  Id. at 60-62.

already found to be speculative and inadmissible.[5] See Docket Nos. 155 and 167.  The Defendant states that Mr. Piza-Blondet's opinion of value is based on his "business experience;" however, all of the real estate business experience cited in Mr. Piza-Blondet's affidavit pertains to the development of residential and/or commercial real estate, and sand extraction, which has been found to be speculative and inadmissible.  Furthermore, Mr. Piza-Blondet's affidavit states that his $143,000 per cuerda opinion of value is derived from the sales of nearby properties for residential development, and is further bolstered by the value of silica sand deposits that he allegedly extracted from those properties.  Because Mr. Piza-Blondet's new opinion of value is based on highest and best uses that this Court already has determined are speculative and inadmissible, his opinion of value that is based on inadmissible evidence is similarly inadmissible at trial.

    Furthermore, Mr. Piza-Blondet's affidavit contains the very same self-serving and unsupported claims that his appraiser, Mr. Gaztambide, previously made regarding alleged variances and permits to allow residential development and sand extraction on nearby property that is zoned B-2.  Just as Judge McGiverin concluded that Mr. Gaztambide had failed to provide any documentary support for these claims, see Docket No. 155 at 9-10, here Mr. Piza-Blondet has similarly failed to provide any documentary evidence of these variances and permits, or any evidence that the nearby land in question was, in fact, zoned B-2.  Notably, the documents that were timely produced by the Defendant during discovery, as well as documents produced by the United States' appraiser, show that the nearby properties referenced by Mr. Piza-Blondet were zoned A-D and C-R, which are far less restrictive than the B-2 zone.  Consequently, these

---

[5] Notably, Mr. Piza-Blondet's new opinion of value of $143,000 per acre based on residential development is approximately three times as much as Mr. Gaztambide's excluded opinion of value of $50,000 per acre based on residential development.

unsupported allegations do not show cause for allowing Mr. Piza-Blondet to offer new, previously undisclosed opinion testimony at trial.[6]

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court bar both Mr. Gaztambide and Mr. Piza-Blondet from offering any opinion of value other than Mr. Gaztambide's opinion of $9,000 per cuerda based on conservation and/or mitigation.

Respectfully submitted this 5th day of August, 2008, by:

ROSA E. RODRIGUEZ-VELEZ
United States Attorney

JOSE M. PIZARRO-ZAYAS
Assistant United States Attorney
Torre Chardon, Suite 1201
350 Carlos Chardon Ave.
San Juan, PR 00918
Tel: (787) 766-5656
Fax: (787)766-6219

s/ Jeffrey M. Tapick
JEFFREY M. TAPICK
Attorney, United States Department of Justice
Environment & Natural Resources Division
P.O. Box 561, Ben Franklin Station
Washington, D.C. 20044
Jeffrey.tapick@usdoj.gov
Tel: (202) 305-0297
Fax: (202) 305-0398

---

[6] If the Court were to permit the Defendant to introduce this new, previously undisclosed testimony from Mr. Gaztambide and Mr. Piza-Blondet at trial, the United States would request an opportunity to re-open the discovery process for yet a third time in this case so that it could conduct discovery, identify rebuttal witnesses, and, ultimately, file additional motions to exclude this opinion testimony that has already been shown to be entirely speculative and therefore inadmissible. See Docket Nos. 155, 167. Because this would add considerable time and expense, and would ultimately result in the exclusion of this speculative evidence, the United States would be prejudiced by the introduction of this new, previously undisclosed opinion testimony – notwithstanding the Defendant's claims to the contrary. See Docket No. 177 at 2.

**CERTIFICATE OF SERVICE**

  I hereby certify that on this 5th day of August, 2008, I filed the foregoing pleading electronically through the CM/ECF system, which caused the following parties or counsel to be served as follows, per the anticipated email from the Court, "Notice of Electronic Filing":

    Paul E. Harrison, Esq.
    532 Girod Street
    Mandeville, LA 70448
    pharrison@pharrisonlaw.com


    /s/ Jeffrey M. Tapick
    JEFFREY M. TAPICK