UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

33.92536 ACRES OF LAND, MORE
OR LESS, SITUATED IN VEGA BAJA
COMMONWEALTH OF PUERTO RICO
AND JUAN PIZA-BLONDET, AND
UNKNOWN OWNERS

    Defendants.

CIVIL NO. 98-1664 (CCC)
CIVIL NO. 98-2344 (CCC)
Consolidated Cases

**Defendant Juan Piza-Blondet's Responses
to First Set of Interrogatories Propounded by the United States**

    **NOW COMES** Defendant Juan Piza-Blondet who in response to the First Set of Interrogatories propounded by the United States, answers as follows:

**Response to Interrogatory No. 1:**

    The individuals who participated in preparing the responses to all discovery requests were David C. Vidrine, Juan Piza-Blondet and Mr. Carlos Gaztambide. The information contained in the responses to same was supplied by Mr. Piza-Blondet and Mr. Gaztambide.

**Response to Interrogatory No. 2:**

    **Juan Piza-Blondet**:

    Mr. Blondet will testify concerning his acquisition, use and plans for future use of the Subject Property and Entire Parcel. Mr. Piza-Blondet will also testify about the use and sale of sand and silica contained upon his property and the economic value of same.

See Response to Interrogatory No. 4.

**Response to Interrogatory No. 8:**

See, response to Interrogatory No. 2. The methodology utilized by the Experts is set forth in their respective Declarations and Reports. Mr. Piza-Blondet relied upon the Expert opinions of Mr. Carlos Gaztambide and Dr. Joyce to reach an opinion of just compensation owed him for the taking of his property. The value of the property and method of calculation of same is fully set forth in the Expert reports rendered by Mr. Gaztambide and Dr. Joyce. Mr. Piza-Blondet will supplement this response as required and following the close of expert opinion, reporting and formal discovery. Further answering:

Below we will summarize the methodology, facts, assumptions, and calculations used by the appraiser retained by land owner Mr. Juan Pizá Blondet in reaching his opinion of the amount of just compensation owned for the taking of the subject property. The appraisal report introduced as evidence is self explanatory. The purpose of the appraisal is to estimate the Market Value of the Fee Simple Estate on the subject property as of December 2, 1998. The last inspection date of the subject property was June 3, 2005. This refers to a parcel of land considered vacant for the purposes of the appraisal comprising 34.930 cuerdas (33.92356 acres) located at Km. 3.8 (interior) P.R. Road 867, Yeguada Ward, Vega Baja, Puerto Rico. According to Title Search Number 05-11226 prepared by Hato Rey Title Insurance Agency, Inc. with offices at MCS Plaza, Office 809, 255 Ponce de León Avenue, Hato Rey, Puerto Rico 00917 with telephone number 787/274-1200 the property is recorded as Number 27,674, Folio 241, Book 380, Vega Baja, Bayamón Property Registry, Section 4. According to the legal description the property comprises 34.0380 cuerdas equivalent to 133,782.87 square meters identified at the Inscription Plan as Lot A-2 and contains a reinforced concrete structure with a homer antenna (H.H.W.) in use by the Federal Aviation Administration. The subject property Number 27,674 was segregated from Property Number 1,987 as per deed number 14, November 26, 1997 before Carlos Colón Marchand, Esquire, recorded at Folio 241, Book 380, Vega Baja, first inscription. The owner of record at the Registry of the Property is Mr. Juan Pizá Blondet.

The Market of the Fee Simple Estate of the subject property was estimated by the only applicable method, the Land Sales Comparison Approach. For the analysis, nine comparable sales were included, described and subject to the Quantitative Analysis that appears on pages 62 through 67 of the appraisal report.

Of the total area of the subject 19.5608 cuerdas are rated upland and were valued at $50,000.00 per cuerda based on comparables L-1, L-2 and L-3 which reflected a range from $49,300.00 to $59,000.00 per cuerda. The Highest and Best Use of the upland is residential development for the middle class segment of the region. Furthermore the analysis of comparable sales L-4 through L-9 indicated a range

from $6,400.00 to $11,000.00 per cuerda for the wetland section of the subject property which comprises 15.396 cuerdas. The unitary applicable within the range evidenced by the market is $9,000.00 per cuerda for the 15.396 cuerdas considered wetland.

Based on the above explained analysis the Market Value of the subject property is estimated as follows:

| | |
|---|---|
| Upland Section of the Subject Property | $   980,000.00 |
| Wetland Section of the Subject Property | $   140,000.00 |
| Total Value Estimate | $1,120,000.00 |

It is important to mention that the above analysis based on the upland and wetland categorization of the land that comprises the subject property is based on local jurisprudence established by the Puerto Rico Supreme Court in Pueblo Vs. Sucesion Quiñones, 71 D.P.R. 261 and ELA vs. Sociedad Civil Agrícola e Industrial 104 D.P.R. 392, as well as Nichols on Eminent Domain, Volume 4, Section 12-314.

Besides the appraisal of the land resources Mr. Juan Pizá Blondet retained Dr. James Joyce, Phd, Professor of Geology of the University of Puerto Rico, Mayaguez Campus, Box 9017, Mayaguez, Puerto Rico 00681-9017. Dr. Joyce estimated the potential volume of extractable silica sand lost to exploitation due to the taking. He estimated a minimum probable scenario of 100,000 cubic meters, in a maximum probable scenario of 260,000 cubic meters and a most probable scenario of 200,000 cubic meters.

Based on the minimum sand extraction potential the present value of the income stream was estimated by the appraiser in $3,250,000.00 and the present value of the most probable sand extraction potential was estimated by the appraiser on $6,300,000.00. Based on the above computations, the Lower Limit of Market Value of the Fee Simple Estate of the sand deposits in the subject property was estimated at $3,000,000.00 while the Upper Limit of Value was estimated in $6,000,000.00.

COMPUTATIONS CONDUCIVE TO A VALUE INDICATION

BY THE INCOME APPROACH

BASED ON THE "MINIMUM" SAND EXTRACTION POTENTIAL

| | |
|---|---:|
| Total Volume Available for Extraction in Meters3 | 100,000 meters3 |
| Total Volume Available for Extraction in Tons (100,000 meters3 x 1.7 ton/mtr3) | 170,000 tons |
| Daily Extraction Potential (1,000 meters3 = 1.7 tons) | 1,700 tons |
| Estimated Daily Extraction (80%) | 1,360 tons |
| Total Number of Days (170,000/1,360 tons) | 125 days |
| Total Number of Months (125/20 days/months) | 6.25 months |

Total Monthly Income

    1,360 tons/day x $30 per ton x 0.80 (net of 20% expenses) x 20 days

          $652,800

| | |
|---|---:|
| Discount Rate | 15% |
| Discount Factor | 5.7460 |

Present Value on First Day of Operation

$3,750,995

Deferral Factor for One Year

0.8696

| | |
|---|---:|
| Present Value of Income Stream | $3,261,865 |
| Rounded to | $3,250,000 |

COMPUTATIONS CONDUCIVE TO A VALUE INDICATION

8

## BY THE INCOME APPROACH
## BASED ON THE "MOST PROBABLE" SAND EXTRACTION POTENTIAL

| | |
|---|---|
| Total Volume Available for Extraction in Meters3 | 200,000 meters3 |
| Total Volume Available for Extraction in Tons (200,000 meters3 x 1.7 ton/mtr3) | 340,000 tons |
| Daily Extraction Potential   (1,000 meters3 = 1.7 tons) | 1,700 tons |
| Estimated Daily Extraction (80%) | 1,360 tons |
| Total Number of Days (340,000/1,360 tons) | 250 days |
| Total Number of Months (250/20 days/months) | 12.5 months |
| Total Monthly Income | |
|     1,360 tons/day x $30 per ton x 0.80 (net of 20% expenses) x 20 days | |
| | $652,800 |
| Discount Rate | 15% |
| Discount Factor | 11.0793 |
| Present Value on First Day of Operation | |
| $7,232,567 | |
| Deferral Factor for One Year | |
| 0.8696 | |
| Present Value of Income Stream | $6,289,440 |
| Rounded to | $6,300,000 |

**Response to Interrogatory No. 9:**

Mr. Piza-Blondet presented a plan to the Planning Board to divide the middle part of the property in eight large lots in order to facilitate the development and sale of lots.

Mr. Piza-Blondet also presented a 72 unit walk-up in one of the lots. In the same mentality Mr. Piza-Blondet segregated the lot belonging to the Tower from the rest of the property which he wished to dedicate to high density residential development.

**Response to Interrogatory No. 10:**

The property was purchased in approximately 1958 for approximately $180,000 USD from Gascop Ayala with the purchase price being paid in either 2 or 3 annual installments.. Mr. Juan Piza-Blondet subsequently inherited the property in approximately 1977.

**Response to Interrogatory No. 11:**

See Response to Interrogatory No. 4 and Exhibits 1-129.

RESPECTFULLY SUBMITTED,

/s David C. Vidrine
J. Wayne Mumphrey (La. Bar Roll No. 9824)
David C. Vidrine (La. Bar Roll No. 21930)
Mumphrey Law Firm
625 Baronne Street
New Orleans, LA 70113
Telephone: (504) 569-0661
Telecopier: (504) 569-0665

Copies to:

JOSE M. PIZARRO ZAYAS
Assistant U.S. Attorney
Room 452 Federal Building
Hato Rey, Puerto Rico 00918
Tel. 766-5656

PAUL HARRISON
JEFFREY M. TAPICK
Attorneys, U.S. Department of Justice
Environment and Natural Resources Division
P.O. Box 561 - Ben Franklin Station
Washington, D.C. 20044
Telephone:  202-305-0299
Fax: 202-305-0398

## Certificate of Service

**I HEREBY CERTIFY** that on this 31st day of March, 2006, a true and correct copy of the foregoing Responses to First Set of Interrogatories Propounded by the United States was was served via email addressed to:

> Jeffrey M. Tapick
> Jeffrey.Tapick@usdoj.gov

/s David C. Vidrine

David C. Vidrine